JOHN ANTHONY POPE (POPOWITZ), ADMINISTRATOR WITH THE WILL ANNEXED OF THE ESTATE OF ANTHONY (ANTON) POPOWITZ, DECEASED, APPELLANT, v. WILLIAM KINGSLEY, ACTING DIRECTOR, DIVISION OF TAXATION, DEPARTMENT OF THE TREASURY OF THE STATE OF NEW JERSEY, RESPONDENT.

Argued April 1, 1963—Decided May 20, 1963.

*Mr. Oscar Meyerson* argued the cause for appellant.

*Mr. Joseph A. Jansen,* Deputy Attorney General, and of counsel, argued the cause for respondent (*Mr. Arthur J. Sills,* Attorney General, attorney).

The opinion of the court was delivered by

HANEMAN, J.  John Anthony Pope, Administrator *c. t. a.* of the Estate of Anthony (Anton) Popowitz, appealed to the Appellate Division pursuant to *R. R.* 4:88–8(a) from an assessment of inheritance taxes by William Kingsley, Acting Director, Division of Taxation, Department of the Treasury of the State of New Jersey (Director).  *R. S.* 54:33–1 *et seq., N. J. S. A.*  This court certified the appeal on its own motion before argument in the Appellate Division.  *R. R.* 1:10–1(a).

On February 3, 1950 Anthony Popowitz executed a will (1950 will) in which he devised and bequeathed his entire estate to his wife, who predeceased him.  Under the terms of the will, the entire estate was to vest in his son, John Anthony Pope, in the event his wife did not survive him.

In March 1958 decedent, then a widower, hired Florence Morrison as a housekeeper.  He was over 70 years of age, allegedly senile, and illiterate.  On April 1, 1958, less than a month after the employment of Morrison, decedent executed a new will (1958 will) in which he bequeathed $1,000 in trust for James Roberts, a minor, not related to the testator, and $1,000 outright to each of three grandchildren.  The residue was devised and bequeathed to Morrison.  Decedent died on May 11, 1958, a resident of Morris County.

On May 12, 1958 Pope filed a *caveat* with the Surrogate of Morris County against the admission to probate of "any paper writing purporting to be the will of Anthony Popowitz." Morrison, pursuant to an application to the Morris County Court, Probate Division, obtained an order to show cause, directed to Pope, why the 1958 will should not be probated, and why letters testamentary thereon should not be granted to her.  *R. R.* 4:103–1(c) ; *R. R.* 5:3–1.  The Director was not made a party to the proceedings.

The pretrial order of the County Court provided :

"1. This is a will contest.  A caveat was filed in Surrogate's court, and the matter is now before this Court on order to show cause why the will should not be admitted to probate and letters testamen-

tary thereon issued to Florence Morrison, the executrix, hereinafter referred to as proponent.

2. Proponent contends that the said will of Anton Popowitz was legally executed in accordance with all statutory requirements and should be admitted to probate.

3. The caveator, John Anthony Popowitz, contends that the testator at the time of his death was over 70 years of age and senile and consequently lacked testamentary capacity. He further contends that the proponent, Florence Morrison, practiced fraud and undue influence in that she was hired as a housekeeper for the testator in March of 1958, at which time he was bedridden and mentally incompetent. Testator was illiterate and the proponent, Florence Morrison, practiced undue influence over him as a result procured the execution of a will wherein she was designated the residuary legatee and principal beneficiary. The caveator has no knowledge as to the attendant circumstances in the execution of the will and puts proponent to her proof."

The parties agreed to a settlement prior to trial. On May 19, 1959 a consent judgment was entered, which provided:

"1. The application for probate of the purported Last Will and Testament, dated 1958, be and is hereby withdrawn and the said proponent Florence Morrison hereby waives and relinquishes any and all claims of any nature, and by way of rights to letters testamentary and any claims and interest in the Estate of the decedent, Anton Popowitz, otherwise known as Anthony Popowitz.

2. The caveator, John Anthony Popowitz, otherwise known as John Anthony Pope, shall submit for probate a will of the decedent dated February, 1950, subject to an equitable charge in favor of his three children specified in the will which by this Court is withdrawn from probate, and in favor of the infant of Lawrence Roberts, so that all provisions relating to bequests for the children specified in the will which by this court is withdrawn from probate will be honored and paid.

3. The said John Anthony Pope hereby agrees to pay to the said Florence Morrison the sum of Four Thousand Dollars ($4000) upon receipt of all closing documents, which check shall be payable to her and her attorney."

The 1950 will was thereafter admitted to probate by the Surrogate of Morris County. The effect was that Pope took the entire estate pursuant to that will and was personally obligated to make the payments called for by the settlement.

Subsequent to the probate of the will, Pope filed an inheritance tax report with the Director which disclosed a gross

value of real estate of $17,500 and of personal property of $475. In addition to deducting debts and expenses from that gross value, Pope sought to deduct the above four $1,000 sums to be paid to the minors and the $4,000 to be paid to Morrison. (There is no basis for such a deduction, *cf. Savings Investment, etc. Co. v. Martin,* 119 *N. J. Eq.* 611 *(Prerog. Ct.* 1936).) The Director, in an admitted disregard of the consent judgment and probate of the 1950 will, assessed a tax in accordance with the terms of the unprobated 1958 will.

The Director admits that he "has no inherent jurisdiction over probate matters, or to determine whether a will is valid or invalid." He further concedes that a surrogate's judgment of probate is not ordinarily subject to collateral impeachment on the ground that the probated will is for any reason allegedly invalid. See *Ryno's Executor v. Ryno's Administrator,* 27 *N. J. Eq.* 522, 525 *(E. & A.* 1875) ; *Gray v. Cholodenko,* 34 *N. J. Super.* 190 *(App. Div.* 1955) ; *Charles Wiener & Sons, Inc. v. Fischer,* 118 *N. J. Eq.* 387 *(Ch.* 1935).

Commencing with the premise that the transfer inheritance tax is levied on the right to succeed to property under a will, the Director, however, justifies his refusal to recognize the probate of the 1950 will by the following rationalization: The tax must be levied upon rights created by a decedent's last valid will regardless of private arrangements between beneficiaries with respect to distribution of the assets of the estate. The single fact that a will has not been probated does not determine its invalidity. Where two wills are known to exist, he has the right and power, as a *quasi*-judicial agent of the State, to determine which will is operative in the absence of a binding adjudication of the invalidity of a will later in date than that admitted to probate by a surrogate. Although admitting that there is at least grave doubt that he could have been made a party to the probate proceeding (see 3 *Page, Wills* § 26.54 *(rev. ed.* 1961)), he concludes that since he was not made a party he is not estopped from collaterally attacking the probate judgment. He bottoms his attempted impeachment of that judgment upon the thesis that all prior

wills were expressly revoked by the 1958 will which maintained its validity because it had never been adjudicated invalid. Hence, the surrogate had no jurisdiction to probate the 1950 will which thus had been voided. It is to be noted that he does not assert that the settlement was motivated by a fraudulent intent to avoid or decrease the amount of inheritance taxes, see *Restatement of the Law, Judgments* § 91, and comment *d* thereunder, *p.* 453 (1942), nor that the County Court judgment was the result of any fraud practiced upon that court.

The sole issue in the County Court *caveat* proceeding which eventuated in the consent judgment was the validity of the 1958 will. This is demonstrated by the pretrial order which places the question squarely in issue. Morrison's withdrawal of the application for probate of the 1958 will and the probate by the Surrogate of the 1950 will operate as an adjudication of the earlier will's validity. This judgment of the Surrogate, so long as it remains unimpeached, excludes the recognition of any other will. It is, of course, subject to direct attack, as is any other judgment. See *R. R.* 4:62–2. The Director, not having undertaken a direct attack, is bound by the judgment probating the 1950 will, and, having eschewed a claim of fraud, he is barred from a collateral attack such as he here seeks to pursue.

The fact that judgment was entered by consent does not change the effect thereof. A consent judgment has equal adjudicative effect to one entered after trial or other judicial determination. *Fidelity Union Trust Co. v. Union Cemetery Ass'n,* 136 *N. J. Eq.* 15, 25 (*Ch.* 1944), aff'd *per curiam* 137 *N. J. Eq.* 455 and 456 (*E. & A.* 1946); *Public Service Elec. and Gas Co. v. Waldroup,* 38 *N. J. Super.* 419, 426 (*App. Div.* 1955). See *Kelleher v. Lozzi,* 7 *N. J.* 17 (1951).

We come, then, to the problem of the tax assessment. The Director and Pope agree that where there is an agreement among beneficiaries to dispose of the assets of the estate in some manner other than that provided in a probated will, the transfer inheritance tax must be assessed in accordance

with the terms of the will as probated, and that no notice need be nor can be taken of the dealings of the beneficiaries among themselves.

There exists a split of authority among the States on the question of the effect upon state inheritance taxes of an agreement compromising a will contest and providing for the distribution of the estate other than as directed in the will. The majority view appears to be that a succession tax is computable in accordance with the terms of the will, unaffected by the compromise agreement. The courts taking this position have reasoned that the tax is fixed at the time of the death of the testator and is applicable only to property which is inherited, and since a will cannot be changed by an independent agreement entered into after the testator's death, property passing under such an agreement is not in fact inherited. 28 *Am. Jur. Inheritance, Estate and Gift Taxes* § 109 (1959); Annot. 36 *A. L. R. 2d* 917, 918 (1954). New Jersey is among the states that have so held. In the case of *In re O'Neill,* 111 *N. J. Eq.* 378, at *p.* 379 *(Prerog.* 1932), the court said:

"* * * The will remains unchanged. The transfers made by the will remain unchanged, and their validity and operative effect have been established by the establishment of the will. Those transfers are therefore taxable under the statute, and they are taxable under the statute only because they are transfers by will. (The case involves no questions of intestate transfer or transfer by decedent *inter vivos.*) The agreement operates, and can operate, only by way of transfers subsequent to the transfer made by the will; the transfers by or pursuant to the agreement are transfers made by those to whom tranfers were previously made by the will. They are not taxable because the statute does not impose a tax upon them."

See also *In re Gould,* 105 *N. J. Eq.* 598 *(Prerog.* 1930), aff'd *per curiam* 151 *A.* 743 8 *N. J. Misc.* 798 *(Sup. Ct.* 1930), aff'd *per curiam* 108 *N. J. L.* 197 *(E. & A.* 1931); *Borish v. Zink,* 2 *N. J. Super.* 42 *(App. Div.* 1949). Since here neither side has argued for a different result, we shall not pursue the question, reserving it for a case in which it is properly pre-

sented. Defendant is, therefore, restricted to a tax assessment upon the transfers under the provisions of the 1950 will.

Reversed.

*For reversal* — Chief Justice WEINTRAUB, and Justices JACOBS, FRANCIS, PROCTOR, HALL, SCHETTINO and HANEMAN—7.

*For affirmance*—None.