EVERS, J.T.C.
The issues in this matter are voluminous but all stem from the complex and often perplexing issue of title to meadowlands. Taxpayer claims that title to a portion of vacant meadowlands for which it is assessed is vested in the State of New Jersey. Complaints were filed in the Tax Court for 1979 through 1982 by which taxpayer seeks a refund of the taxes paid on said lands and correction of the assessment lists. Additionally taxpayer claims the balance of its lands are assessed in excess of true value and that the assessments are discriminatory. Taxpayer’s motion for partial summary judgment, for the reasons hereafter stated, is granted in part and denied in part.[1] Briefly, the background of events leading to this controversy is as follows.
*4 These vacant meadowlands known as Block 123, Lots 7, 8 and 9 were acquired by taxpayer in 1963. Claiming that all or part of the premises are or were flowed by the mean high tide and are thus owned by the State of New Jersey pursuant to grant of the crown, the State, in 1970 and thereafter, filed certain maps, pursuant to N.J.S.A. 13:1B-13.4 which delineated the lands subject to the claim. In 1970 taxpayer’s application to the State for a quitclaim conveyance was denied. In 1972 the State commenced an action seeking to enjoin taxpayer from introducing fill to the property. In June 1976 taxpayer filed a complaint to quiet title (q.t.a.) in the Superior Court, Law Division. N.J.S.A. 13.1B-13.5. The 1972 injunction action was consolidated with that matter. On June 18, 1982, pursuant to a settlement, judgment was entered in the quiet title action which, in pertinent part, stated:
ORDERED AND ADJUDGED that title to the riparian lands in question, 8.878 acres, is hereby vested in fee simple absolute in the defendant State of New Jersey, by the Tidelands Resource Council, in the Division of Coastal Resources, in the Department of Environmental Protection. The same is vested without any right, title or interest, legal or equitable whatsoever of any of the other named parties. Said parties, their heirs, representatives or assigns, are hereby barred and foreclosed from ever asserting any claim, right, title or interest, legal or equitable whatsoever in said property ....
In view of the q.t.a. judgment and the well established law that title to such lands is in the state as sovereign, see Schultz v. Wilson, 44 N.J.Super. 591, 596, 131 A.2d 415 (App.Div.1957), taxpayer’s motion for a refund and correction of the assessment lists is ripe for summary judgment. There is no genuine issue of material fact. Judson v. Peoples Bank and Trust Co. of Westfield, 17 N.J. 67,110 A.2d 24 (1954). That portion of taxpayer’s motion seeking a reduction in the value of the remaining property is denied and will abide a trial on the merits. Substantial factual questions exist. Ibid.
*5 In support of its motion taxpayer relies on the Superior Court judgment and alternatively on N.J.S.A. 54:2-41 (Correction of Error Statute).
Carlstadt opposes the motion on several grounds as follows.[2] (1) The Tax Court lacks jurisdiction to determine questions of ownership. (2) The state’s claim represents only a lien or cloud on the title and, on the basis of Secaucus v. Damsil, 120 N.J.Super. 470, 295 A.2d 8 (App.Div.1972), aff’d 62 N.J. 90, 299 A.2d 88 (1973), is of no concern in arriving at value. (3) Should the state ownership be recognized it is a joint ownership with taxpayer and thus the taxpayer must still pay the taxes and seek contribution from the state. (4) Since it was not a party nor was it put on notice to participate in the entry of the consent judgment in the q.t.a. borough cannot be bound by such judgment. (5) The property (8.878 acres) was never “acquired” by the state as that term is defined by statute but, if acquired by virtue of the quiet title judgment, said judgment can only operate prospectively. (6) Because of practical considerations the quiet title judgment cannot be applied retroactively.[3] Taxpayer’s claim that borough, having failed to file an answer to any of the complaints, is estopped from raising such defenses is clearly without merit as an answer to a local property tax complaint is not required. See R. 8:3-6.
Concerning the question of jurisdiction of the Tax Court in this matter, borough’s reliance on Alid v. North Bergen, 180 N.J.Super. 592, 436 A.2d 102 (App.Div.1981) is misplaced. Alid involved a matter in the nature of a prerogative writ, jurisdiction over which is vested solely in the Superior Court. This *6 court is not confronted with an in lieu of prerogative writ matter here nor is it, as borough seemingly claims, being called upon to determine a title dispute. Rather it is called upon to determine the impact of the q.t.a. judgment in the context of taxpayer’s claims of excessive valuation and invalid assessments. Jurisdiction over those matters, rightfully so, is not questioned. Clearly jurisdiction over this matter is in the Tax Court.
Reserving for later the question of its retroactivity it is clear that the q.t.a. judgment distinguishes the instant matter from Secaucus v. Damsil, supra. In Damsil the land was purchased subject to “tidelands or riparian rights which might be claimed by the State of New Jersey;” a factor which taxpayer claimed adversely affected its value. In rejecting this notion the court held that it is the value of the land, including all interests therein, and not the value of the owner’s title that is to be determined. Here the claim has been reduced to a judgment which decreed that title to 8 + acres is vested in the State. No cloud exists; it is a fact. The issue of ownership was never raised in Damsil.
I find no evidence of joint ownership between the State and taxpayer so as to subject the taxpayer to taxation of the 8 + acres. Property owned by the State, assuming exemption pursuant to N.J.S.A. 54:4-3.3, when leased to another whose property is not exempt and when the leasing of such does not make the real estate taxable, does subject the leasehold estate and appurtenances to taxation. However no such leasehold exists here. N.J.S.A. 54:4-2.3.
Borough has cited no authority in support of its position that the June 18, 1982 consent judgment is not binding on it. To the contrary it is settled law in New Jersey that a consent judgment has equal adjudicative effect to one entered after trial or other judicial determination. Demchak v. Kingsley, 90 N.J.Super. 190, 216 A.2d 753 (App.Div.1966). In Pope v. Kingsley, 40 N.J. 168, 191 A.2d 33 (1963) the Supreme Court held:
*7 The fact that judgment was entered by consent does not change the effect thereof. A consent judgment has equal adjudicative effect to one entered after trial or other judicial determination. Fidelity Union Trust Co. v. Union Cemetery Association, 136 N.J.Eq. 15, 25 [40 A.2d 205] (Ch.1944), aff’d per curiam 137 N.J.Eq. 445, 456 [45 A.2d 305] (E. & A.1946); Public Service Electric & Gas v. Waldroup, 38 N.J.Super. 419, 426 [119 A.2d 172] (App.Div.1955). [40 N.J. at 173, 191 A.2d 33]
If borough’s argument is to be construed as being in opposition to the possible exempt status of state-owned property in these circumstances, such argument is premature. See N.J.S.A. 54:4-3.3a; p. 3, n. 3, supra.
In analyzing borough’s argument concerning “acquisition”, several statutes are of crucial importance. N.J.S.A. 54:4-3.3c states:
For purposes of this act, [N.J.S.A. 54:4-3.3 — Exemption of Public Property], the right of possession, subject to L.1970, c. 214, § 1, or vesting of title, whichever shall first occur, shall be deemed to be the acquisition with respect to such real property.
Seemingly, borough claims that the state had no right of “possession” because as that term is employed in N.J.S.A. 54:4-3.3c it applies only in eminent domain situations. Borough’s interpretation is erroneous. Although L.1970, c. 214, § 1 pertains to eminent domain situations, the phrase “subject to” does not mean “limited to”. Furthermore, I note that N.J.S.A. 54:4-3.3b states, in pertinent part:
Where real property is acquired by the state or by a state agency, or by an authority created by the state, by purchase, condemnation or otherwise, such property shall become tax exempt.... [Emphasis supplied]
The use of the phrase “or otherwise” makes it clear that the statute does not limit itself to lands acquired through condemnation.
Borough’s argument that title to the 8 + acres never vested in the state is contradicted by the clear language of the quiet title judgment. Taxpayer’s argument that the judgment did not vest title in the state on June 18,1982, but that it simply settled the preexisting state of title leads to consideration of borough’s last opposing point, that based on practical considerations.
*8 It is deemed unnecessary to recite the specific functions and duties of assessors, municipal governing bodies, county boards of taxation, county freeholders and their agents as mandated by Title 54. Suffice it to say that the entire assessment process through the collective efforts of municipal, county and state officials is calculated to the raising of sufficient revenue to permit taxing districts and counties to provide necessary services and to equalize the burdens on the taxpaying public. For the system to operate equitably, or to even work at all, it is necessary that the assessment of real estate taxes be stable. A measure of permanency in real property taxation is basic to the abilities of taxing districts to raise revenue to support their local programs and to maintain their educational systems and for counties to receive contributions to their budgets from the taxing districts. The entire revenue raising process has its beginnings in N.J.S.A. 54:4-23 which, in pertinent part, states:
All real property shall be assessed to the person owning the same on October 1 in each year. The assessor shall ascertain the names of the owners of all real property situate in his taxing district, and after examination and inquiry, determine the full and fair value of each parcel of real property situate within the taxing district at such price as, in his judgment, it will sell for at a fair and bona fide sale.
Of critical importance also is N.J.S.A. 54:4 — 24 which requires the assessor to tabulate the names of all owners on a list and opposite each name to incorporate the description and area of each parcel owned by that person so as to ascertain its location and extent and the taxable value of each parcel.
It is not argued that the Carlstadt assessor did not fulfill those duties in making the Brancasons’ assessments for 1979 through 1982. He determined the owner to be Brancasons. He further determined the area of the assessable land to be 30.5 acres in 1979 and 1980 and 28.187 in 1981 and 1982. He had no reason to find otherwise. On the basis of his efforts, Carlstadt’s budget was struck, assessments were finalized, taxes were collected and its contribution to Bergen County was established. Likewise through the efforts of each assessor in the remaining 566 taxing districts in each of the 21 counties similar results *9 were achieved. In short the entire comprehensive legislative scheme as required by Title 54 was effectuated.
Taxpayer’s position that the quiet title judgment applies retroactively would compel assessors to take notice of the claims of the state as may be evidenced by the mere filing of maps, to physically review the maps, determine the acreage encompassed by the claims and thence change their assessment lists. While estimates vary, there is no question that the amount of land potentially subject to such claims is vast. The Assistant Commissioner for Natural Resources of the Department of Environmental Protection has estimated that 235,000 acres might be involved.[4] Of the 21 counties in New Jersey, all except Warren, Sussex, Hunterdon and Morris are subject to investigation for potential claims to lands now or formerly flowed by the tides. The areas subject to investigation are depicted on 1,632 base photomaps covering 2,452 square miles or almost 30% of the total land and water area of the State. See Dickinson v. Fund For Support Of Free Public Schools, 187 N.J.Super. 320, 327, 454 A.2d 480 (Law Div.1982). It can be readily seen that to compel assessors to follow the course suggested by taxpayer would be to confront them with a monumental, perhaps well nigh impossible, task not envisoned by the Legislature and would wreak havoc with municipal budgets throughout the state.
Although it was called upon to interpret the Farmland Assessment Act, N.J.S.A. 54:4-23.1 et seq., the appellate court’s opinion in Andover Tp. v. Kymer, 140 N.J.Super. 399, 356 A.2d 418 (App.Div.1976) is most appropriate here:
Another objective of the act is furthered by the foregoing interpretation thereof: a consideration of the problems of the assessors [citation omitted]. Such problems are minimized to the extent that the Legislature has adopted a concrete formula to determine whether land is actively devoted to the statutory uses. Moreover, as the judge below indicated, to adopt the township’s view, the assessor would have the “staggering undertaking” of extracting from the land non-fertile area, such as rocky, swampy or wooded lands. That task, requiring a thorough investigation of every part of each parcel subject to a farmland *10 assessment application, or the alternative procedure of requiring the applicant to prove that every part of his land is actively devoted to agricultural or horticultural use is contrary to the legislative purposes as well as common sense, [at 404, 356 A.2d 418],
While I find that assessors in general, and the Carlstadt assessor in this particular instance, are not required to change their assessment lists based on map filings the questions surrounding taxpayer’s rights which flow from the quiet title judgment remain. As stated earlier taxpayer claims that the judgment did not vest title in the State when it was entered but rather it clarified what always was, i.e., ownership of part of the tract by the sovereign. An analysis of that argument from a common sense point of view, Andover, supra, leads me to conclude that it is contrary to the legislative purposes expressed in Title 54 and in N.J.S.A. 13:1B-13.1 et seq.
The history of state ownership of riparian or tide flowed lands predated the Revolutionary War. Schultz v. Wilson, supra. In O’Neill v. State Highway Department, 50 N.J. 307, 235 A.2d 1 (1967), our Supreme Court held that the State owns, in fee simple, all lands flowed by the tide up to the mean high water line, and such title cannot be lost by estoppel, adverse possession or prescription. In this same opinion Chief Justice Weintraub said that as a matter of good housekeeping the state should do what is “feasible” to catalog its tidelands’ holdings, but noted the difficulties involved. In response thereto, as noted by Justice Schreiber in Newark v. Natural Resource Council, etc., 82 N.J. 530, 534, 414 A.2d 1304 (1980), cert. den. 449 U.S. 983, 101 S.Ct. 400, 66 L.Ed.2d 245 (1980), the Legislature directed title studies and surveys of the state’s meadowlands to determine, what portions were state-owned.[5]
N.J.S.A. 13:1B-13.2 set priorities for the work, with the Hackensack Meadowlands to be the first survey, and subsequent sections of L.1968, c. 404, specified methods and procedures for certification of state-owned lands and publication of maps “clearly indicating” state-owned lands. The Supreme Court’s *11 opinion in the Newark case was issued May 15, 1980; thus, it was not until that date that the extremely complex tidal-mapping programs and procedures received final approval against legal sufficiency and reasonableness challenges. Using current statutory titles, the mapping and conveyancing procedures as to tidelands may be summarized as follows:
1. Preparation of maps by the Office of Environmental Analysis (O.E.A.) of the Department of Environmental Protection (.N.J.S.A. 13:1D-1 et seq.)
2. Approval and publication of maps, pursuant to N.J.S.A. 13:1B-13.4 by the Tidelands Resource Council (T.R.C.)
3. Review by the T.R.C. of objections by aggrieved persons as to title, pursuant to N.J.S.A. 13:1B-I3.5(a).
4. Commencement of quiet title actions pursuant to N.J.S.A. 13:1B-I3.5(b) by aggrieved persons.
From the case and statutory law it is thus readily seen that while the State may have always owned tidelands, the extent of that ownership cannot be determined until the completion of the procedures summarized above and, in this case, the completion of the “quiet title action” brought by the taxpayer. Until the extent of the lands owned by the State is finally determined, the assessor has no obligation to change his books and, in fact, has no alternative but to follow the mandates of N.J.S.A. 54:4-23 and N.J.S.A. 54:4-24. It is that procedure and only that procedure which produces that measure of stability and permanency essential to the fair imposition of tax burdens on the public.
The quiet title action was finalized on June 18, 1982 when judgment was entered. It was only then that the State “acquired” the property pursuant to N.J.S.A. 54:4-3.3b. With regard to payment of taxes following the acquisition, N.J.S.A. 54:4-3.3d provides that the State shall be responsible for payment of taxes therefrom to the end of the calendar year. By virtue of that statute it is clear that taxpayer is not entitled to any refund from Carlstadt but, if it paid any taxes for a period *12 subsequent to June 18, 1982, it may seek reimbursement from the State.
In view of the foregoing taxpayer’s counsel shall submit an order pursuant to R. 4:42 providing for the following:
1. Denying that portion of the motion seeking a reduction in value of taxpayer’s lands.
2. Granting that part of the motion concerning the extent of land owned by taxpayer and directing the assessor to change the books as of June 18,1982 indicating thereon that taxpayer owns 19.309 acres of Block 123, Lots 7, 8 and 9 in accordance with Exhibit A which is annexed to and made part of the judgment quieting title.[6]
3. A copy of the order to be served on the State of New Jersey within five days from date of entry.
4. Permitting the State to intervene in the trial of the 1982 matter in view of its interest in the amount of taxes paid or to be paid for that year by virtue of N.J.S.A. 54:4-3.3d.

The lands claimed to be erroneously assessed or owned by the state varied from complaint to complaint. In 1979 and 1980 taxpayer claimed it owned only 0.8 acres; in 1981 1.2864 acres and in 1982 19.4 acres. This variation resulted from various surveys and other exhibits produced in connection with a quiet title action.
The 1979 and 1980 complaints contain an additional count that the actual acreage owned by either taxpayer and/or the state was 28 acres and not the *4 30.5 acres for which it was then assessed. An order by this court granting partial summary judgment was entered January 14, 1981 determining the total acreage in question to be 28.187 acres. In 1981 and 1982 the assessment was based on 28.187 acres.

No argument was presented concerning the applicability of N.J.S.A. 54:2-41. In any event this is clearly not a “correction of error” situation as contemplated by that statute. See Manczak v. Dover Tp., 2 N.J.Tax 529 (Tax Ct.1981).

Borough’s argument that if the property is state owned and exempt taxpayer has no standing to claim said exemption need not be considered. A determination as to whether such property is exempt is not necessary to a decision on this motion. See N.J.S.A. 54:4-3.3a et seq.

Hearings on Assembly Concurr. Resolu. 3037. Before the Subcomm. of the Assembly Comm, on Agriculture and Environment 15 (1981).

L.1968, c. 404, § 87 et seq., codified as N.J.S.A. 13:1B-13.1 et seq.

Subsequent to the filing of this opinion the quiet title action judgment was amended to include a metes and bounds description. In that amended judgment title was quieted in the State of New Jersey for 9.044 acres leaving a total of 19.143 acres owned by taxpayer. This opinion is amended accordingly.