BRANCASONS, A PARTNERSHIP OF THE STATE OF NEW JERSEY, PLAINTIFF-RESPONDENT AND CROSS-APPELLANT, v. STATE OF NEW JERSEY, DEFENDANT-APPELLANT AND CROSS-RESPONDENT.

BRANCASONS, A PARTNERSHIP OF THE STATE OF NEW JERSEY, PLAINTIFF-APPELLANT, v. CARLSTADT BOROUGH, DEFENDANT-RESPONDENT.

Superior Court of New Jersey
Appellate Division

Argued April 8, 1986—Decided April 24, 1986.

Before Judges MICHELS, GAULKIN and DEIGHAN.

*Harry Haushalter,* Deputy Attorney General, argued the cause for appellant and cross-respondent State of New Jersey (*W. Cary Edwards,* Attorney General of New Jersey, attorney; *James J. Ciancia,* Assistant Attorney General, of counsel; *Harry Haushalter,* on the brief).

*Max Manshel* argued the cause for respondent and cross-appellant and appellant Brancasons.

*John J. Langan, Jr.* argued the cause for respondent Borough of Carlstadt (*Langan* and *Lynch,* attorneys; *John J. Langan, Jr.,* of counsel and on the letter brief).

PER CURIAM.

These consolidated appeals concern the liability of both defendant State of New Jersey (the State) and plaintiff Brancasons,[1] for local property taxes on certain land which is designat-

---

[1] Plaintiff Brancasons, a partnership of the State of New Jersey, was incorrectly designated as Brancasons, Inc. in the Law Division record.

ed tidal and is located within defendant Borough of Carlstadt. By partial summary judgment of the Tax Court, dated August 22, 1983, it was determined that, as of June 18, 1982, Brancasons owned approximately 19.14 acres and the State owned approximately 9.04 acres of land designated as Block 123, Lots 7, 8 and 9 on the tax map of the Borough of Carlstadt. Thereafter, in a consolidated judgment and revised order of the Law Division and Tax Court, dated March 6, 1985, the trial court: (1) ordered the State to reimburse Brancasons in the sum of $1,734.22 for taxes paid to the Borough of Carlstadt on the 9.04 acres of land for the period from June 18, 1982 to December 31, 1982; and (2) denied Brancasons' motion for reconsideration of the prior partial summary judgment of the Tax Court, dated August 22, 1982.

The State now appeals from that portion of the March 6, 1985 judgment and revised order which held that it was liable to Brancasons for property taxes on its riparian property from June 18, 1982 to December 31, 1982.[2] In addition, by virtue of this court's grant of leave to appeal, Brancasons appeals from the portion of the judgment and revised order of March 6, 1985 which denied its motion for reconsideration of the prior partial summary judgment of the Tax Court dated August 22, 1983.

We are satisfied from our study of the record and the arguments presented that the trial court properly granted partial summary judgment and denied the motion for reconsideration in these consolidated matters and, further, that all issues of law raised by the State and Brancasons in support of their respective challenges to the judgment and revised order under review are clearly without merit. *R.* 2:11–3(e)(1)(E). Accordingly, the judgment and revised order of the Law Divi-

---

[2]Although Brancasons filed a notice of cross-appeal from that portion of the same judgment and order dismissing the second count of its complaint, which sought to impose additional liability on the State for taxes it paid to the Borough of Carlstadt on the 9.04 acres of land for the period prior to June 18, 1982, this cross-appeal was withdrawn at oral argument.

sion and Tax Court is affirmed substantially for the reasons expressed by Judge Evers in his opinion of July 22, 1983, reported as *Brancasons v. Carlstadt Borough*, 6 *N.J.Tax* 1 (Tax Ct.1983), and as supplemented in his memorandum opinion of February 8, 1985, reported as *Brancasons v. State of New Jersey*, —— *N.J.Tax* —— (Law Div. and Tax Ct.1985).

Additionally, we are satisfied that the trial court properly determined, for purposes of applying *N.J.S.A.* 54:4–3.3a, that the State "acquired" the subject tideland property on June 18, 1982, when it was vested with record title by virtue of the consent judgment which was entered in the quiet title action. Although, by virtue of its riparian rights, the State has long held a claim to portions of the Brancasons property, it did not have a "right of possession" and there was no "vesting of title," prior to the entry of this consent judgment. *See N.J.S.A.* 54:4–3.3c (defining "acquisition" as the right of possession or the vesting of title).

As this court recognized in *Dickinson v. Fund for the Support of Free Public Schools*, 187 *N.J.Super.* 224, 230 (App.Div.1982), modified on other grounds, 95 *N.J.* 65 (1983), the State may not, "simply by claiming [tidelands] property, deprive a rightful owner of his title." Since the Legislature contemplated no such action, it established the mechanisms contained within *N.J.S.A.* 13:1B–13.1 *et seq.* to enable property owners to challenge the State's claim of title. This legislative plan, as well as the fiscal tax plans of local municipalities would be frustrated if tidelands property was not considered to be "acquired" by the State at the time a quiet title judgment is entered in its favor.

The trial court's interpretation and construction of *N.J.S.A.* 54:4–3.3a, in the factual context of this matter, is consonant with the spirit and equity of the statute. *See New Jersey Builders, Owners and Managers Assoc. v. Blair*, 60 *N.J.* 330, 338–340 (1972); *Dvorkin v. Dover Twp.*, 29 *N.J.* 303, 315 (1959).

574

In this regard, we deem it worthwhile to repeat what was stated by our Supreme Court in *Dvorkin v. Dover Twp., supra:*

A return to the first principles of statutory interpretation teaches that when the lawgiver's intent is in doubt, the court "ought to interpret the law to be what is most consonant to equity and least inconvenient." *Kerlin's Lessee v. Bull*, 1 *Dall.* 175, 1 *U.S.* 175, 1 *L.Ed.* 88 (Sup.Ct.Pa.1786); *Associates of Jersey Company v. Davison*, 29 *N.J.L.* 415, 424 (E. & A. 1860). This is the doctrine of "equity of the statute" which found expression in *Eyston v. Studd*, 2 *Plowd*, 459A, 75 *Eng.Rep.* (1574), and from which flows the constructional aid that has taken firm roots in our jurisprudence—that the spirit of the legislative direction prevails over its terms. *See Horack, Sutherland Statutory Construction* (3d ed. 1943), §§ 6001 to 6007; *McCaffrey, Statutory Construction*, § 4, p. 8 (1953).

We might add that the "equity of the statute" rule does not, when properly applied, substitute the judicial for the legislative will, but rather in the consideration of all the material elements reaches the result probably intended by the draftsman had he anticipated the situation at hand. Indeed, to hold otherwise in the absence of considerations clearly requiring such a contrary construction, is to claim for the judiciary a monopoly on the ability to perceive the justice of a cause. [29 *N.J.* at 315].

Affirmed.