BIANCO, J.T.C.
The sole remaining issue before the court in this matter is the calculation of interest (and penalty, if any) due by plaintiff, Peter De Rosa (“Mr. De Rosa”) as the Executor of the Estate of Joseph Rendeiro (“the Estate”), on the balance of the Estate’s transfer inheritance tax obligation. In De Rosa v. Dir., Div. of Taxation, 28 N.J.Tax 73 (Tax 2014), this court affirmed the transfer inheritance tax assessment of defendant, Director, Division of Taxation (“the Director”), against the Estate. Pursuant to N.J.S.A. 54:35-3, the court determined that the appropriate rate of interest on the Estate’s tax obligation is 6% per annum; the parties were directed to submit computations as permitted by R. 8:9-3. Inasmuch as the parties were not in agreement on the computations, they submitted counter-computations to the court in accordance *258 with R. 8:9-4. As permitted by R. 8:9-4[1], and for the reasons set forth below, the court accepts the interest computations of the Director and rejects the interest computations of Mr. De Rosa.
Facts and Procedural History
The relevant facts are recounted in De Rosa and need not be repeated at length here. See De Rosa, supra, 28 N.J.Tax at 75-76.
In De Rosa, this court granted summary judgment in favor of the Director, finding that Mr. De Rosa under-reported the New Jersey transfer inheritance tax obligation of the Estate by reporting the distributions of the Estate according to a settlement agreement instead of the terms of the Will. Under the settlement, Ms. Fagin, granddaughter of the late Joseph Rendeiro (individually the “Decedent”), received $400,000 from the Estate rather than the $10,000 she was to receive according to the terms of the Will. The court found in favor of the Director, affirming the increased assessment of $239,279.22.
After the court’s ruling, the parties were unable to agree on computations to submit to the court pursuant to R. 8:9 — 3, for the outstanding balance, interest, and penalties owed by the Estate. Accordingly, each submitted counter-computations pursuant to R. 8:9-4, utilizing 6% interest, as per this court’s Order. Mr. De Rosa submitted a recalculated balance of $75,046.08 to reflect the Estate’s participation in the 2009 New Jersey Tax Amnesty Program, L. 2009, c. 21 (codified at N.J.S.A. 54:53-19) (“the Tax Amnesty Program”), which provided a 50% reduction in interest owed and a complete abatement of all tax penalties. The Director maintained the position that the Estate failed to qualify under the Tax Amnesty Program, and submitted a recalculated balance in the amount of $95,985.64 [2], which reflects the full amount of *259 interest owed (6% per annum) as well as a statutory 5% amnesty penalty as to the unpaid tax liability.
A telephone conference between counsel for the parties and the court was held on December 10, 2014 in an attempt to reconcile the counter-computations. Resolution of the matter was not forthcoming.
Analysis
The Tax Amnesty Program provided a 45-day window during which taxpayers were offered the opportunity to pay the balance of delinquent taxes and only one-half of the amount of interest due; the other half of the amount of interest due would be forgiven. Id. (1)(a). If eligible, any penalties were waived and no civil or criminal penalties were imposed. Id.
To be eligible under the Tax Amnesty Program, the delinquent tax obligation must have accrued between January 1, 2002 and February 1, 2009. The taxpayer was also required to make “full payment” of the tax and interest due:
No taxpayer shall be entitled to a waiver of one-half of the balance of interest due as of May 1, 2009, penalty and recovery fee pursuant to this section unless full payment of the tax and one-half of the balance of interest due as of May 1, 2009 is made in accordance with the rules and procedures established by the director.
[Id. (emphasis added).]
If a taxpayer failed to comply with these requirements, a non-abatable, non-waivable 5% penalty was imposed on any amnesty-eligible tax liabilities that were not satisfied during the 45-day amnesty period:
There shall be imposed a 5% penalty, which shall not be subject to waiver or abatement, in addition to all other penalties, interests, or costs of collection otherwise authorized by law, upon any State tax liabilities eligible to be satisfied during the period established pursuant to subsection a. of this section that are not satisfied during the amnesty period.
[Id. (1)(b) (emphasis added).]
Even when a taxpayer makes a late payment, or underpays his taxes, the Director may nevertheless waive or abate any late payment penalties. The rules regarding late payment penalties are contained in N.J.S.A. 54:49(a), which imposes penalties for late filing or payment of taxes “unless any part of any underpayment of tax required to be shown on a return or report is shown to be *260 due to reasonable cause." Id. (emphasis added). In the absence of “reasonable cause,” if the Director determines that “there is a deficiency with respect to the payment of any tax due under ... law, he shall assess the additional taxes, penalties, if any, pursuant to any State tax law or pursuant to this subtitle, and interest ... due the State from such taxpayer.” N.J.S.A. 54:49-6(a).
Whether waiver or abatement of late payment penalties is granted is subject to the discretion of the Director, which “should not be disturbed unless found to be manifestly arbitrary or unreasonable.” Kasot, Inc. v. Dir. Div. of Taxation, 24 N.J.Tax 588, 599 (Tax 2009) (citing Patel v. Dir. Div. of Taxation, 13 N.J.Tax 509, 515-516 (Tax 1993)). N.J.S.A. 54:49-11 details the discretionary remittance or waiver of tax penalty, and provides
If the failure to pay any such tax is explained to the satisfaction of the director, he may remit or waive the payment of the whole or any part of the penalty and may remit or waive the payment of any interest charge ... including any such penalty or interest with respect to deficiency assessments made pursuant to [N.J.S.A. 54:49-6].
[N.J.S.A. 54:49-11.]
Discretionary waiver or abatement of penalties is appropriate where “the taxpayer can show reasonable cause for failure to file any return or pay any tax when due and makes full payment of the taxes due.” N.J.A.C. 18:2.27(b) (emphasis added). Examples of “reasonable cause” include “a pending action or proceeding for judicial determination” so long as the “action or proceeding involves a question or issue affecting whether or not the ... entity is required to ... pay tax” and “the action or proceeding is not based on a position that is frivolous.” Id. (c)(4).
The regulations further provide that “any other cause for delinquency which would appear to a person of ordinary prudence and intelligence as a reasonable cause for delay and which clearly indicates an absence of willful neglect may be determined to be reasonable cause.” Id. (c)(5).
Moreover,
In addition to any relevant grounds for reasonable cause as exemplified in [N.J.A.C. 18:2-2.7(c)(5) ] above, circumstances that indicate reasonable cause and good faith with respect to the substantial understatement or omission of tax, where clearly established by or on behalf of the taxpayer, may include ... an honest *261 misunderstanding of fact or law that is reasonable in light of the experience, knowledge and education of the taxpayer.
[Id. (d)(1) (emphasis added).]
On the other hand, the regulations also caution that “ignorance of the law ... will not be considered as a basis for reasonable cause.” Id. (c)(5).
The issue before this court now is whether Mr. De Rosa had reasonable cause for under-reporting his New Jersey inheritance tax liability for the purpose of qualifying for the Tax Amnesty Program. Whether a plaintiff establishes reasonable cause “turns on the facts.” United Parcel Serv. Gen. Servs. Co. v. Dir. Div. of Taxation, 430 N.J.Super. 1, 11, 61 A.3d 160 (App.Div.2013) aff'd, 220 N.J. 90, 103 A.3d 260 (2014) (per curiam). In making this determination, this court is guided by the New Jersey Supreme Court decision in United Parcel Serv. Gen. Servs. Co. v. Dir. Div. of Taxation, 220 N.J. 90, 103 A.3d 260 (2014) (per curiam)[3], which evaluated whether reasonable cause existed for the waiver of late payment and statutory amnesty penalties under N.J.S.A. 54:49-11(a) and N.J.A.C. 18:2-2.7.
In United Parcel Serv., supra, 220 N.J. 90, 103 A.3d 260, the New Jersey Supreme Court upheld the Appellate Division’s ruling in United Parcel Serv., supra, 430 N.J.Super. 1, 61 A.3d 160 that it was an abuse of discretion for the Director to assess late payment and tax amnesty penalties because the tax amnesty statutes in question were not intended to authorize penalties in the setting of that case. United Parcel Serv., supra, 220 N.J. at 95, 103 A.3d 260. The New Jersey Supreme Court agreed with the Tax Court’s determination that the plaintiffs’ tax position was reasonable under existing law, and therefore the requirements for reasonable cause were satisfied. Accordingly, the Director’s refusal to waive assessed late penalties was an abuse of discretion under N.J.S.A. 54:49-11(a) and N.J.A.C. 18:2-2.7 because late payment and statutory amnesty penalties were not intended in *262 situations where a taxpayer had reasonable cause in underreporting its tax liability.
Each of the plaintiffs in United Parcel Service were members of the United Pai’cel Service group of companies (collectively, “UPS members”). The UPS members engaged in a number of inter-company cash transfers as part of its cash management system, to which it ascribed no tax consequences. On audit, the Division of Taxation (“the Division”) characterized these transfers as loans and imputed interest income, assessed unpaid taxes, statutory interest, late payment penalties, and tax amnesty penalties.
At trial, the Tax Court affirmed the Division’s characterization of the inter-company transfers as loans and the imputation of interest income. However, the court disagreed with the Division regarding the assessment of late payment penalties and tax amnesty penalties. The Tax Court found that the Director’s refusal to abate the late payment penalties and statutory tax amnesty penalty was “manifestly unreasonable.” 430 N.J.Super. at 12, 61 A.3d 160.
The Tax Court determined that the UPS members established reasonable cause and therefore satisfied the requirements for waiver of late payment penalties, as set forth in N.J.S.A. 54:49-11(a) and N.J.A.C. 18:2-2.7. The Tax Court found that the existing “case law ... could be interpreted to suggest that the cash management system utilized by the UPS members may not have generated loans, and no case law existed with respect to the tax treatment of the accrued but unpaid business services fee amounts.” United Parcel Serv., supra, 430 N.J.Super. at 12, 61 A.3d 160 (emphasis added). Because no “directly pertinent legal authority” existed at the time regarding the matter, “genuine questions of fact and law existed concerning the propriety of the Director’s imputation of interest.” Id. at 8, 61 A.3d 160 (citing United Parcel Serv. Gen. Servs. Co. v. Dir. Div. of Taxation, 25 N.J.Tax 1, 50 (Tax 2009)). Accordingly, the Tax Court concluded that the UPS members’ satisfied the requirements for reasonable cause.
*263 Moreover, the Division itself acknowledged in writing that one of the UPS members had established “reasonable cause in this matter.” 220 N.J. at 93, 103 A.3d 260. In its opinion, the Appellate Division found that the Director’s position that the UPS members did not show reasonable cause “contradicts the determination made in the Division’s Final Determination letters.” 430 N.J.Super. at 12, 61 A.3d 160.
As for the statutory tax amnesty penalties, the Tax Court also rejected the Division’s position. The Division contended that, by the plain language of the statute, the penalties were not “waivable,” as both tax amnesty statutes at issue specifically stated “shall not be subject to waiver or abatement.” Id. at 14, 61 A.3d 160 (citing L. 1996, c. 2, § 4 and L. 2002, c. 6, § 1 (codified at N.J.S.A. 54:53-17 and -18)). The Tax Court, however, determined that this provision was not absolute. Instead, the court found that the tax amnesty penalty was “inapplicable to the facts of the case.” United Parcel Serv., supra, 25 N.J.Tax at 51-54.
In reaching that conclusion, the Tax Court looked to the legislative history behind the tax amnesty statutes at issue. During the hearings regarding the adoption of the 1996 tax amnesty statute, L. 1996, c. 2, § 4 (codified at N.J.S.A. 54:53-17), the State Treasurer stated “the bill’s penalties will not be applied to the deficiencies assessed pursuant to a question of law or fact uncovered through routine audits of taxpayers otherwise in compliance with the filing and payment requirements of State taxes.”[4] United Parcel Serv., supra, 430 N.J.Super. at 15-16, 61 A.3d 160 (citation omitted). The Tax Court interpreted this to mean that tax amnesty penalties only applied to “tax obligations known or by which reasonable inquiry could have been known to the taxpayer. ...” Id. at 7, 61 A.3d 160 (emphasis added) (citing United Parcel Serv., supra, 25 N.J.Tax, at 54).
*264 The Tax Court concluded that the facts in United Parcel Serv. presented such an exception to the tax amnesty penalties, as described by the State Treasurer. The Tax Court found the plaintiffs were “taxpayer[s] who took a reasonably debatable reporting position, in full compliance with established law, and [were] later found to owe additional tax liability following an audit.” United Parcel Serv., supra, 430 N.J.Super. at 16, 61 A.3d 160. This satisfied the requirements for reasonable cause, and consequently it was an abuse of discretion for the Director to assess late payment and tax amnesty penalties.
There is no need to apply a different interpretation of the statutory language establishing the Tax Amnesty Program at question in this matter as it is virtually identical[5] to the statutory language of the tax amnesty programs at issue in United Parcel Serv.
In sharp contrast to United Parcel Serv., here Mr. De Rosa did not have reasonable cause to believe his tax return was accurate because it has been long-settled under New Jersey law that settlement agreements subsequent to a testamentary transfer have no effect on the calculation of inheritance tax. Unlike United Parcel Serv., it clearly cannot be said that no “directly pertinent legal authority existed” regarding the effect of subsequent settlement agreements on the calculation of inheritance tax. As a result, there is no “genuine question of fact or law” that could create an underlying basis for reasonable cause.
When Mr. De Rosa asked this court in the previous matter to modify the inheritance tax by the terms of the Settlement, his *265 reliance on In re Estate of Lingle, 72 N.J. 87, 367 A.2d 878 (1976) was misguided and unreasonable. In Lingle, the decedent entered into a contract “to make and keep effective a will” subject to specified terms. Id. at 92. When the decedent died years later, he left his estate contrary to those agreed-upon terms. His daughters then asserted a claim under the contract as third-party beneficiaries, and a settlement was reached between the parties thereafter. The New Jersey Supreme Court calculated the inheritance tax as modified by the terms of the settlement. In this ease, Plaintiff asked this court to do likewise.
In its opinion, the Supreme Court in Lingle held that “a valid contract to make a particular testamentary disposition is, or may be, a transfer within the meaning of N.J.S.A. 54:34-1 ...” Id. at 93. The contract, and not the will, was found to be the taxable transfer. The Court explained that it did not matter whether the terms of the contract were satisfied by performance, adjudication, or settlement following breach; what mattered was that the tax consequences flowed from the contract, not the will. Id. at 96-97. Accordingly, tax was calculated according to the terms of the settlement of the contractual claim.
This court in De Rosa rejected Mr. De Rosa’s argument that the holding in Lingle controlled in this matter, ruling that Lingle did not apply to the facts presented in this case. The general rule in New Jersey is that when real and personal property passes by way of will or testamentary instrument, inheritance tax is calculated according to the terms of the will. Subsequent settlement agreements or other arrangements modifying the probated will have no effect on the calculation of inheritance tax; the terms of the will control.
On this issue, the New Jersey Supreme Court has observed that:
There exists a split of authority among the States on the question of the effect upon state inheritance taxes of an agreement compromising a will contest and providing for the distribution of the estate other than as directed in the will. The majority view appears to be that a succession tax is computable in accwdance with the terms of the vnU, unaffected by the compromise agreement. The courts taking this position have reasoned that the tax is fixed at the time of the death of the testator and is applicable only to the property which is inherited, and since a will *266 cannot be changed by an independent agreement entered into after the testator’s death, property passing under such an agreement is not in fact inherited. New Jersey is among the states that have so held.
[De Rosa, supra, 28 N.J.Tax at 78 (emphasis added) (quoting Pope v. Kingsley, 40 N.J. 168, 174 [191 A.2d 33] (1963) (internal citations omitted). See also Borish v. Zink, 2 N.J.Super. 42 [64 A.2d 461] (App.Div.1949); Donavan [Donovan] v. Baldwin, 10 N.J.Tax 224 (Tax 1988); In re O’Neill, 111 N.J. Eq. 378, 162 A. 425 (Prerog.1932); In re Gould, 105 N.J. Eq. 598 [148 A. 731] (Prerog.1930), aff'd per curiam 8 N.J. Misc. 798 [151 A. 743] (Sup.Ct.1930), aff'd per curiam 108 N.J.L. 197
[154 A. 632] (E & A.1931)).]
In rejecting Mr. De Rosa’s argument, and distinguishing the present matter from Lingle, this court explained:
The instant case, however, does not concern ‘a contract to make a particular testamentary disposition’ as contemplated in Lingle, nor was there a claim made against the Estate, as there was in Lingle. Here, Ms. Fagin filed a will contest. The Settlement resolved the will contest and not a contractual claim that existed prior to the Decedent’s death. Therefore, Pope, and not Lingle, controls here. As articulated in Pope, ‘[the transfer inheritance] tax is computable in accordance with the terms of the will, unaffected by the compromise agreement.’ 40 N.J. at 174 [191 A.2d 33], Pope and its related cases stand for the proposition that transfers via agreements between beneficiaries to redistribute assets of an estate, occur subsequent to the transfer via will, which is subject to the transfer inheritance tax.
[De Rosa, supra, 28 N.J.Tax at 79-80.]
There is nothing to suggest the New Jersey Supreme Court in Lingle intended to overturn the standing precedent in New Jersey that settlement agreements have no effect on the calculation of inheritance tax applied to testamentary transfers via will. Lingle was a unique situation where the taxable transfer was actually a contract, not a will, and it existed prior to the decedent’s death. That is clearly not the situation presented to the court in this matter.
Being that this is an ordinary situation in which a settlement agreement was entered into after a testamentary transfer via will, and no special facts as in Lingle exist here, this court applied the long-standing principle of New Jersey law that inheritance tax is calculated in accordance with the terms of a will; a subsequent settlement agreement has no effect.
Mr. De Rosa’s reporting position was not “reasonably debatable” given the state of existing law. United Parcel Serv., supra, 430 N.J.Super. at 16, 61 A.3d 160. The tax obligation in this case was one that was known, or by which reasonable inquiry, could *267 have been known to the taxpayer. Id. at 7, 61 A.3d 160 (citations omitted). Further, unlike United Parcel Serv. where the case law was open to interpretation or non-existent, the law governing the present matter was unequivocal and well-settled. Id. at 12, 61 A.3d 160. Consequently, it was within the discretion of the Director to deny Mr. De Rosa the benefit of the reduced interested payments under the 2009 Tax Amnesty Program and to assess the statutory tax amnesty penalties because he failed to make full payment under the Program, and he did so without reasonable cause.
The court is further satisfied that Mr. De Rosa’s position was not “an honest misunderstanding of fact or law that is reasonable in light of [his] experience, knowledge and education.” N.J.A.C. 18:2-2.7(d). Additionally, in this court’s view, Mr. De Rosa’s understatement of the Estate’s inheritance tax obligation “would [not] appear to a person of ordinary prudence and intelligence” as reasonable.
Mr. De Rosa’s only contention that he qualified under the Tax Amnesty Program is contained in a short letter Brief submitted to the court on October 27, 2014. In short, plaintiffs argument is that his inheritance tax return was filed under the Tax Amnesty Program, and at all stages of this proceeding that position was maintained, with no argument to the contrary from the Division until this time.
While it is acknowledged that the filing of Mr. De Rosa’s inheritance tax Return was timely, his application under the Tax Amnesty Program was nonetheless deficient as he failed to make “full payment,” and for the reasons set forth above, he did so without reasonable cause.
Accordingly, the court finds that it was within the discretion of the Director to deny Mr. De Rosa qualification under the Tax Amnesty Program, and to assess statutory tax amnesty penalties. Kasot, supra, 24 N.J.Tax at 599 (the discretion of the Director “should not be disturbed unless found to be manifestly arbitrary or unreasonable”) (citation omitted).
*268 Conclusion
When Mr. De Rosa filed the Estate’s inheritance tax return in 2009, he failed to report the full amount of the Estate’s tax liability in accordance with long-settled New Jersey law regarding the tax effect of settlement agreements entered into after a testamentary disposition.
Because the relevant ease law was settled at the time of the filing, there was no reasonable cause for Mr. De Rosa’s failure to file his return in accordance with that law, and “ignorance of the law ... will not be considered as a basis for reasonable cause.” N.J.A.C. 18:2-2.7(c)(5). As a result, it was within the discretion of the Director to deny the taxpayer qualification under the 2009 Tax Amnesty Program because he did not make “full payment” within the 45-day period, and there was no genuine question of fact or law that could create a basis for reasonable cause. Accordingly, the discretion of the Director will not be disturbed.
Interest should be calculated at 6% per annum as previously determined, plus a 5% amnesty penalty on the unpaid, amnesty-eligible assessment, for a total balance of $96,054.01[6], in accordance with the detailed break-down of the interest and amnesty penalty calculations provided by the Director. The court’s order and final judgment has been mailed to each party by the court via regular mail.

 "The Court may then rule on the submissions or place the matter upon the motion calendar for disposition.” R. 8:9-4. The court determined that a formal motion on the matter was not necessary.

 Originally the Director submitted the amount of $96,242 without any back-up computations. At the court’s request to explain how that number was arrived, the Director submitted revised computations showing the amount of $95,985.64.

 Decided approximately four months after this court issued its previous opinion in this matter.

 Similar language was not contained in the legislative history of the 2002 tax amnesty statute, L. 2002, c. 6, § 1 (codified at N.J.S.A. 54:53-18). However, because the two statutes were "identical,” the Tax Court concluded that they should be interpreted to have the same meaning. United Parcel Serv., supra, 430 N.J.Super. at 22, 61 A.3d 170.

 The Tax Amnesty Program at issue in this case, L. 2009, c. 21 (codified at N.J.S.A. 54:53-19) contains the same language requiring "full payment" as the 1996 and 2002 tax amnesty statutes interpreted in United Parcel Serv., supra, 430 N.J.Super. 1, 61 A.3d 160, L. 1996, c. 2, § 4 and L. 2002, c. 6, § 1 (codified at N.J.S.A. 54:53-17 and -18). The language concerning the statutory 5% tax amnesty penalty is also identical. On the other hand, the windows within which taxpayers were required to make payment varied from 45 to 60 to 90 days. The amount of interest waived under the programs also varied. Under the 1996 and 2002 programs, all interest was waived. Under the Tax Amnesty Program at hand, only one-half of the interest due is waived.

 At the court’s request, the Director recalculated the total amount due from Mr. De Rosa through and including the date of this opinion.