New York Times Sales, Inc. *vs.* Commissioner of Revenue.

No. 95-P-1339.

Suffolk. May 10, 1996. - July 19, 1996.

Present: Smith, Porada, & Ireland, JJ.

*Taxation,* Corporation, Related corporations. *Corporation,* Subsidiary.

The Appellate Tax Board correctly concluded, on the record before it, that transfers of cash from a subsidiary corporation to its parent constituted dividends and not loans, and properly ruled that the subsidiary's request for abatements for taxes assessed on imputed interest on the theory that the transfers were loans. [751-754]

Appeal from a decision of the Appellate Tax Board.

*Robert A. Carleo, Jr.,* Special Assistant Attorney General (*Kerry-Lyn Eadie* with him) for the Commissioner of Revenue.

*William E. Halmkin* (*Donald W. Parker* with him) for the taxpayer.

Smith, J. The Commissioner of Revenue (commissioner) appeals from a decision of the Appellate Tax Board (board) granting the taxpayer, New York Times Sales, Inc.'s (Times Sales), requests for tax abatements. The commissioner had ruled that cash transfers from Times Sales to its parent, The New York Times Company, Inc. (Times Company or parent), were interest free intercompany loans, and as a result, G. L. c. 63, § 39A, authorized the commissioner to impute interest on such loans to Times Sales as "fair compensation" for the "services" it rendered to Times Company.[1] See *Commissioner of Rev.* v. *AMIWoodbroke, Inc.,* 418 Mass. 92, 93-97

[1]General Laws c. 63, § 39A, provides in pertinent part: "The net income of a foreign corporation which is a subsidiary of another corporation or closely affiliated therewith by stock ownership shall be determined by eliminating all payments to the parent corporation or affiliated corporations in excess of fair value, and by including fair compensation to such foreign

(1994). The board ruled, however, that the cash transfers were "distributions with respect to the stock of a subsidiary [and were] to be treated as a dividend . . . and not properly characterized as an intercompany loan."[2] Therefore, the board ruled that Times Sales's requests for tax abatements should have been granted.

The undisputed facts are as follows. For the tax years at issue (fiscal years 1977 through 1980, inclusive), Times Sales, a Delaware corporation registered to do business in Massachusetts, was one of forty-seven wholly owned subsidiaries of Times Company. Times Sales was engaged in the business of soliciting advertising and circulation for Times Company in forty-eight States including Massachusetts and was responsible for publishing the newspaper's national edition.

In 1977, Times Company and its subsidiaries, including Times Sales, established a cash management system which served as a consolidated income and expense payment system for all of the domestic members of the Times Company group. Times Sales participated in this system by instructing its customers to make payment directly to one of several lock box bank accounts. On a daily basis, the amounts deposited in the lock box accounts would be "upstreamed," or transferred directly to the parent's concentration account maintained in New York.

Times Company paid Times Sales's expenses out of funds in a disbursement account maintained for Times Sales in a North Carolina bank. Invoices were sent or forwarded to Times Company's accounting staff, and Times Company's treasury staff funded the disbursement account on an "as needed" basis from the New York concentration account. In addition, Times Company used the concentration account to fund Times Sales's payroll accounts on a payroll period basis.

corporation for all commodities sold to or services performed for the parent corporation or affiliated corporations."

In drafting G. L. c. 63, § 39A, "the commissioner was concerned about tax evasion by means of intercorporate transactions that would depress the corporate excess and income of corporations subject to taxation in Massachusetts." *Polaroid Corp.* v. *Commissioner of Rev.*, 393 Mass. 490, 500 (1984).

[2]For purposes of computing net income under G. L. c. 63, § 38(*a*)(1), a dividend is "any distribution of property made by a corporation out of its earnings and profits." *Commissioner of Rev.* v. *Northeast Petroleum Corp.*, 401 Mass. 44, 49 (1987). See *Commissioner of Rev.* v. *Shafner*, 392 Mass. 256, 258-260 (1984).

The primary purpose of the cash management system was to increase the efficient use of available cash from all of the members of the Times Company group. One significant benefit of the system was that it reduced Times Company's banking fees by consolidating banking arrangements and eliminating individual bank loans for working capital, thereby reducing interest expenses.

During the tax years at issue, Times Sales transferred to Times Company cash amounts in excess of the amounts that Times Company transferred to pay Times Sales's expenses. Times Company never issued promissory notes or other forms of indebtedness for the cash payments, nor has Times Sales ever requested or otherwise sought repayment of the amounts which it transferred to Times Company under the cash management system. Times Sales has charged no interest on amounts it transferred to Times Company. Times Company never gave a security agreement or collateral or other pledge respecting the cash transfers, and there was no cap or limit placed on the amounts of cash which could be transferred under the system. Times Company reflected the cash transfers on its general ledger as accounts receivable and accounts payable, netting the amounts of each at the end of each month. Times Sales never declared a dividend to Times Company during the tax years at issue.

We begin our analysis by recognizing that "[a] decision of the board will not be reversed or modified if it is based on substantial evidence and on a correct application of the law." *Koch* v. *Commissioner of Rev.*, 416 Mass. 540, 555 (1993).Further, "[i]n reviewing mixed questions of fact and law, the board's expertise in tax matters must be recognized, and its decisions are due 'some deference.' " *Ibid.*, quoting from *McCarthy* v. *Commissioner of Rev.*, 391 Mass. 630, 632 (1984).

Here, the commissioner does not claim that the board's findings are unsupported by substantial evidence but, rather, argues that the board's legal conclusions are incorrect. The commissioner also argues that the board erred as matter of law in its *factual* conclusion that the transfers of cash from Times Sales to Times Company pursuant to the cash management system do not constitute intercompany loans. In support of its argument, the commissioner cites *Commissioner of*

*Rev.* v. *AMIWoodbroke, Inc.*, 418 Mass. 92 (1994). That decision, however, does not control this matter.[3]

It is well settled that a distribution by a subsidiary corporation to its parent is a loan and not a dividend if, at the time of its payment, the parties intended it to be repaid. *Crowley* v. *Commissioner of Int. Rev.*, 962 F.2d 1077, 1080 (1st Cir. 1992). See also *Alterman Foods, Inc.* v. *United States*, 611 F.2d 866, 869 (Ct. Cl. 1979) (*Alterman II*). Whether the parties actually intended the transaction to be a loan or dividend is an issue of fact. *Crowley* v. *Commissioner of Int. Rev., supra. J.A. Tobin Const. Co.* v. *Commissioner of Int. Rev.*, 85 T.C. 1005, 1022 (1985). To resolve the issue, the courts employ a multi-factor analysis. *Alterman Foods, Inc.* v. *United States*, 505 F.2d 873, 877 n.7 (5th Cir. 1974) (*Alterman I*); *Alterman II, supra. Crowley* v. *Commissioner of Int. Rev., supra* at 1079. No single factor is determinative; rather, all the factors must be considered to determine whether repayment or indefinite retention of the funds is intended. *Alterman II, supra.*

Here, the board noted that several factors demonstrated that the parties intended that the cash transactions be dividends and not loans. They included (1) the amounts transferred were not limited in any manner; (2) there was no repayment schedule and no fixed dates of maturity; (3) the amounts "upstreamed" to Times Company were intended to remain with the Times Company for use in fulfilling its various corporate purposes; (4) no interest was charged; (5) no notes or other evidences of indebtedness existed; (6) the transferred cash was not secured in any manner; (7) at no time did Times Sales request repayment; (8) there was no evidence that Times Sales had any expectations of repayment; and (9) at no time did Times Company make any effort to repay the amounts transferred to it by Times Sales.

---

[3]In *Commissioner of Rev.* v. *AMIWoodbroke, Inc., supra* at 96-97, the court held that interest-free intercompany loans constitute "services performed" within the meaning of G. L. c. 63, §§ 33 and 39A, and therefore, the commissioner can impute interest on interest-free intercompany loans.

However, *AMIWoodbroke, Inc.*, is distinguishable from the present matter because, in that case, the parties stipulated that the subsidiary made interest-free loans to its parent. Here, there is no such stipulation, and whether the cash transfers were intercompany loans or dividends was the issue before the board.

The Commissioner challenges the board's ruling claiming that (1) Times Sales never declared a dividend, and (2) Times Sales and Times Company carried the cash transactions on their books as accounts receivable and payable, respectively.[4]

In order for a cash transfer like the one that took place here to be labeled a dividend, it was not necessary for Times Sales to actually declare a dividend. "To constitute a distribution taxable as a dividend, the benefit received by the shareholder need not be considered as a dividend either by the corporation or its shareholders, declared by the board of directors, nor other formalities of a dividend declaration need be observed, if on all the evidence there is a distribution of available earnings or profits under a claim of right without any expectation of repayment." *Clark* v. *Commissioner of Int. Rev.*, 266 F.2d 698, 711 (9th Cir. 1959). See *Noble* v. *Commissioner of Int. Rev.*, 368 F.2d 439, 442-443 (9th Cir. 1966); *Livernois Trust* v. *Commissioner of Int. Rev.*, 433 F.2d 879, 883 (6th Cir. 1970); *Jack's Maintenance Contractors, Inc.* v. *Commissioner of Int. Rev.*, 703 F.2d 154, 156 (5th Cir. 1983).

Further, the method by which two related businesses account for cash transfers on their internal financial records is not deemed to be a controlling factor in determining the nature of the transaction. It has been held that such records, being the product of the parties, do not necessarily constitute a reliable reflection of the true nature of the transaction. *Alterman I*, 505 F.2d at 878. *J.A. Tobin Const. Co.* v. *Commissioner of Int. Rev.*, 85 T.C. at 1022. The argument by the commissioner, if accepted, would be contrary to the weight of authority applying a multifactor analysis to such transactions and would violate the general rule that no single factor is

---

[4]The commissioner also argued before the board that Times Company's payment to Times Sales of its expenses was the equivalent of a partial payment of a debt. The board rejected that argument, relying on *Alterman II*, *supra* at 872, where the court stated, on underlying facts similar to those in the case at bar: "True, payment by [a parent] of the subsidiaries' expenses had the same effect as a partial repayment of a debit balance, but there was never a transfer of cash to a subsidiary solely for the purpose of offsetting a debit balance. Other than the demands implicit in the subsidiaries' submission of their bills to [the parent] for payment, the subsidiaries which had made advances demanded neither a formal accounting of the balances nor a transfer of cash by way of repayment. In other words, there was no attempted collection of the purported loans, and indeed, little objective evidence of loans except the books created by the parties." The commissioner does not raise that ground on appeal.

determinative. *Alterman I, supra* at 877; *Alterman II*, 611 F.2d at 872.

Finally, the commissioner claims that the board's decision effectively creates an exception to § 39A in that, Times Sales escapes paying taxes on interest that it should be receiving from Times Company, its parent, as a result of the cash payment. The commissioner claims that this situation is analogous to the intercorporate dividend deduction found in G. L. c. 63, § 38(*a*)(1).[5] This argument misapprehends the statutory scheme. "The reason for the intercorporate dividend deduction is to prevent multiple taxation of corporate income. Without the deduction, three categories of taxpayers — the subsidiary corporation, the parent corporation, and the parent's shareholders — would each be subject to taxation on the same basic income. The State dividend deduction serves to ensure that the income may be taxed only to the original earner (the subsidiary) and the parent's shareholders." *Dow Chem. Co.* v. *Commissioner of Rev.*, 378 Mass. 254, 268 (1979). The commissioner's interpretation insists that a subsidiary be taxed not only upon its earned income, but also upon that portion of its earned income distributed to a parent as a dividend. Such an interpretation would subvert the statutory purpose against undue multiple taxation. The portion of the subsidiary's income distributed as a dividend would be taxed twice, first when it is earned and again as interest imputed to be earned on the cash transfer. This would, at least in part, defeat the intercorporate dividend deduction for which the parent is eligible under § 38(*a*)(1).

In light of the above analysis, we affirm the board's decision.

> *Decision of the Appellate Tax*
> *Board affirmed.*

---

[5]See *Dow Chem. Co.* v. *Commissioner of Rev.*, 378 Mass. 254, 267-272 (1979); *Polaroid Corp.* v. *Commissioner of Rev.*, 393 Mass. at 498 n.10.