61 A.3d 160

UNITED PARCEL SERVICE GENERAL SERVICES CO.; UNITED PARCEL SERVICE CO.; UPS TELECOMMUNICATIONS, INC.; UPS WORLDWIDE FORWARDING, INC.; UPS WORLDWIDE FORWARDING, INC., AS SUCCESSOR IN INTEREST TO UPS AIR FORWARDING, INC., PLAINTIFFS–RESPONDENTS, v. DIRECTOR, DIVISION OF TAXATION, DEFENDANT–APPELLANT.

Superior Court of New Jersey
Appellate Division

Argued November 1, 2012—Decided March 7, 2013.

2

Before Judges MESSANO, LIHOTZ, and OSTRER.

*Marlene G. Brown,* Senior Deputy Attorney General, argued the cause for appellant (*Jeffrey S. Chiesa,* Attorney General, attorney; *Lewis A. Scheindlin,* Assistant Attorney General, of counsel; *Ms. Brown,* on the briefs).

*Mitchell A. Newmark* (Morrison & Foerster, L.L.P.) argued the cause for respondents (*Paul H. Frankel* (Morrison & Foerster) and *Mr. Newmark,* attorneys; Messrs. *Newmark and Frankel,* of counsel and on the brief).

The opinion of the court was delivered by

LIHOTZ, J.A.D.

The defendant Director of the New Jersey Division of Taxation (the Director) appeals from the final order of the Tax Court of New Jersey in these matters, consolidated for trial. Plaintiffs are five entities of the United Parcel Service group of companies (UPS Group), each of which is a subsidiary of United Parcel Service of America, Inc. (America), the parent corporation.[1] United Parcel Service General Services Co. (GS), UPS Telecommunications, Inc. (Telecom), UPS Worldwide Forwarding, Inc. (WWF), UPS World-wide Forwarding, Inc. as successor in interest to UPS Air Forwarding, Inc.(AF), and United Parcel Service Co. (UPSCO) filed separate complaints in the Tax Court, contesting the Division's

---

[1] The UPS Group is engaged primarily in the business of the time-specific delivery of small packages and documents, both domestically and internationally. America, which generally served as a holding company, was the parent corporation, and the other members of the Group, including all plaintiffs, were wholly-owned subsidiaries, each providing a separate function. *United Parcel Serv., supra,* 25 *N.J.Tax* at 11.

assessment of corporate business tax (CBT), pursuant to New Jersey's Corporation Business Tax Act, *N.J.S.A.* 54:10A-1 to -41, following an audit.

Following a seven-day trial, Judge Harold A. Kuskin rendered his opinion, which included comprehensive findings of fact and conclusions of law. *See United Parcel Serv. Gen. Servs. Co. v. Dir., Div. of Taxation,* 25 *N.J.Tax* 1 (Tax 2009). A final judgment was entered on September 9, 2010.

Following the filing of this appeal, several issues were resolved in extensive discussions between the parties. On appeal, the Director seeks reversal of the abatement of late payment and tax amnesty penalties the Director had imposed. The Director argues the imposition of these penalties is mandatory; because the assessments were upheld, the penalties attach. Consequently, the Director argues waiver of these penalties and assessments was legal error. We disagree and affirm.

We need not fully recite the facts and myriad issues presented to the Tax Court, as Judge Kuskin's opinion details the nature of the controversy giving rise to this appeal, which is generally accepted as undisputed. *Id.* at 8-12. Suffice it to say, the main controversy centered on the tax consequences of the UPS Group's daily, inter-company transfers in operating its corporate cash management system, which we will describe.

GS contractually provided various centralized management services, including the cash management system, to members of the UPS Group. The system was designed to ensure all subsidiaries had access to cash for their daily operations, and to maximize the return received by America on its overall cash reserves. Daily cash sweeps were made from subsidiaries' bank accounts and placed in one bank account controlled by America, which was used to pay expenses submitted by members of the UPS Group, including plaintiffs, as needed. Any cash in America's account not immediately needed to pay subsidiary expenses was in turn deposited for short-term investment.

> The funds provided by America for payment of a particular subsidiary's expenses or obligations may have been less than, equal to, or more than the cash swept into America's account from that subsidiary. America treated the cash sweeps as fungible among the subsidiaries, so that cash from one subsidiary could be used to pay the expense or obligation of another. Other than in connection with payment of their respective expenses, the subsidiaries had no right to obtain the return of funds swept from their bank accounts into America's account, and had no interest in, or right to receive, any of the investment returns generated by UPICO.[2]
>
> ... The procedures for the sweeping of funds from a subsidiary's bank account to America's bank account apparently were undocumented other than by the appropriate banking entries. No promissory notes or other evidences of indebtedness were signed by America with respect to the funds swept into its account, no repayment schedules were established, no interest payments were required from or made by America, and America provided no collateral to any of the subsidiaries.
>
> [*Id.* at 15–16.]

The second type of inter-company transfer at issue related to an agreement between America and GS, requiring America to provide monthly payments to GS for the centralized services provided to the subsidiaries. Although payable monthly, payment was not made every month, and GS reported the accrued but unpaid fees on its tax return.

The Division audited plaintiffs, focusing on, among other things, these two types of inter-company cash transfers. On their corporate tax returns, plaintiffs noted the cash sweep transfers as negative receivables and ascribed no tax consequence to them. On audit, pursuant to *N.J.S.A.* 54:10A–10 and *N.J.A.C.* 18:7–5.10(a)5, the Division imputed interest income on the inter-company transfers it deemed were loans, and assessed unpaid taxes, statutory interest, and late payment penalties, *see N.J.S.A.* 54:49–6a. The monies due GS from America were also characterized as loans. Interest income was imputed on these loan advances between related parties. *Ibid.* Finally, Tax Amnesty penalties, pursuant to *N.J.S.A.* 54:53–17 and *N.J.S.A.* 54:53–18, were imposed on taxes due from the unreported income.

---

2 UPICO is a wholly-owned subsidiary, which made short-term investments with funds provided by America. America transferred any excess from the subsidiary cash sweeps to UPICO.

During trial, factual and expert testimony was presented regarding the treatment of the inter-company transfers. Judge Kuskin concluded the facts supported the Division's characterization of the transfers as loans for tax purposes, and affirmed the Director's imputation of interest income. However, he also found plaintiffs had demonstrated reasonable cause to believe their reporting position was correct regarding the treatment of the cash management system transfers and the business service fees due GS, even though disallowed by the Division following an audit. *United Parcel Serv., supra,* 25 *N.J.Tax* at 50. Concluding the proper tax treatment was not clearly discernable under reported authority, Judge Kuskin found plaintiffs satisfied the requirements justifying waiver of the late payment penalties, as permitted by *N.J.S.A.* 54:49–11a and *N.J.A.C.* 18:2–2.7, and found the Director's refusal to waive the assessed late payment penalties was an abuse of discretion. *Ibid.*

Following audit, the Division also imposed statutory tax amnesty penalties. The Director upheld the penalty assessment, concluding a taxpayer's failure to pay outstanding tax obligations during the amnesty period mandated imposition of the non-waivable penalties. Judge Kuskin rejected the Director's position, concluding amnesty penalties only applied to tax obligations known or which by reasonable inquiry could have been known. *Id.* at 54. Therefore, the amnesty penalty provisions did not apply to the tax obligations at hand, which were first determined following audit and which were the subject of good faith dispute by plaintiffs.[3] *Ibid.*

Our review of a decision by the Tax Court is limited. *Estate of Taylor v. Dir., Div. of Taxation,* 422 *N.J.Super.* 336, 341, 28 *A.*3d 852 (App.Div.2011). The Tax Court judge's findings will

---

[3] The amnesty penalties were also imposed on taxes due on other New Jersey income. However, issues regarding the tax liability and applicable penalties related to this other New Jersey income were resolved by agreement and are not considered in this appeal.

not be disturbed unless we conclude they are arbitrary or lack substantial evidential support in the record. *Yilmaz, Inc. v. Dir., Div. of Taxation*, 390 *N.J.Super.* 435, 443, 915 *A.*2d 1069 (App. Div.) (citations omitted), *certif. denied*, 192 *N.J.* 69, 926 *A.*2d 854 (2007).

We also acknowledge the Director and the Tax Court have expertise in the "specialized and complex area" of tax statutes. *Metromedia, Inc. v. Dir., Div. of Taxation*, 97 *N.J.* 313, 327, 478 *A.*2d 742 (1984). As a general rule, the Director's assessments carry a presumption of correctness. *Yilmaz, supra*, 390 *N.J.Super.* at 440, 915 *A.*2d 1069 (citations omitted). Further, regulations promulgated pursuant to and consistent with statutory authority are presumptively valid and should also receive deference. *Koch v. Dir., Div. of Taxation*, 157 *N.J.* 1, 8, 722 *A.*2d 918 (1999).

In any event, we need not defer to legal determinations made by the Director or the Tax Court. Our review of these conclusions is de novo. *See Am. Fire & Cas. Co. v. Div. of Taxation*, 189 *N.J.* 65, 79, 912 *A.*2d 126 (2006); *Manalapan Realty, L.P. v. Twp. Comm. of Manalapan*, 140 *N.J.* 366, 378, 658 *A.*2d 1230 (1995) (noting "[a] trial court's interpretation of the law and the legal consequences that flow from established facts are not entitled to any special deference").

A taxpayer challenging the Director's determination bears the burden of proof. *Atl. City Transp. Co. v. Dir., Div. of Taxation*, 12 *N.J.* 130, 146, 95 *A.*2d 895 (1953). Although taxpayers are free to organize their affairs as they see fit, they remain bound by the tax consequences of their business decisions. *Gen. Trading Co. v. Dir., Div. of Taxation*, 83 *N.J.* 122, 136–37, 416 *A.*2d 37 (1980) (citation omitted). Relevant to this matter, Judge Kuskin recognized, "[c]reating a corporate structure, with one parent corporation and numerous wholly-owned subsidiaries, constitutes a business decision producing tax consequences that are binding on the corporate entities." *United Parcel Serv., supra*, 25

*N.J.Tax* at 14. *See Household Fin. Corp. v. Dir., Div. of Taxation,* 36 *N.J.* 353, 362, 177 *A.*2d 738 (noting the creation of subsidiaries is a business decision, likely motivated by some tax advantage), *cert. denied,* 371 *U.S.* 13, 83 *S.Ct.* 41, 9 *L.Ed.*2d 49 (1962).

Before analyzing the Tax Court's determinations striking late payment penalties, we briefly review Judge Kuskin's analysis of the issue.

Plaintiffs, although reporting the transfers made pursuant to the cash management system on their CBT returns, disputed the Division's characterization of these transactions as inter-company loans resulting in imputed income. At trial, plaintiffs argued the transfers were "in the nature of equity" or capital, generating no income or tax consequences. *United Parcel Serv., supra,* 25 *N.J.Tax* at 17. Judge Kuskin rejected this assertion as unsupported, finding no evidence plaintiffs acquired equity interests in America. *Ibid.* Rather, he recognized the cash management system was merely employed as "a method for efficient money management," without consideration of any tax significance. *Ibid.*

Judge Kuskin noted no New Jersey court had considered the tax treatment of transfers made in such a cash management system. *Ibid.* He analyzed those reported cases from other jurisdictions examining similar factual circumstances surrounding cash transfers from a subsidiary to its parent. *Id.* at 17–18. In each decision, specifically keying on the lack of evidence of intended repayment, the conclusion reached was the transfers at issue constituted dividends, not loans. *See Alterman Foods, Inc. v. United States,* 505 *F.*2d 873, 875 (5th Cir.1974); *Fin Hay Realty Co. v. United States,* 398 *F.*2d 694 (3d Cir.1968); *Alterman Foods, Inc. v. United States,* 222 *Ct.Cl.* 218, 611 *F.*2d 866 (1979); *N.Y. Times Sales, Inc. v. Comm'r of Revenue,* 40 *Mass.App.Ct.* 749, 667 *N.E.*2d 302, *review denied,* 423 *Mass.* 1108, 671 *N.E.*2d 952 (1996).

Distinguishing the facts at hand, Judge Kuskin concluded the Director reasonably determined the transfers in this matter were loans on which interest should be imputed. *United Parcel Serv.,*

*supra,* 25 *N.J.Tax* at 21. Recognizing there were no formalities clearly evincing loan treatment, Judge Kuskin weighed the economic reality of the transaction as if the parties were not related, along with the intention of the parties gleaned from the facts. *Id.* at 21–24. In this case, the cash sweeps were used to pay the subsidiaries' expenses, not America's costs. *Id.* at 23.

Having determined the transactions were loans triggering imputed interest income, Judge Kuskin reviewed the applicability of late payment penalties. *Id.* at 48–51. *N.J.S.A.* 54:49–4a imposes penalties for late filing or payment of taxes "[u]nless any part of any underpayment of tax required to be shown on a return or report is shown to be due to reasonable cause[.]" If the Director determines "there is a deficiency with respect to the payment of any tax due under ... law, he *shall* assess the additional taxes, penalties, if any, pursuant to any State tax law or pursuant to this subtitle, and interest ... due the State from such taxpayer." *N.J.S.A.* 54:49–6a (emphasis added).

The Director, however, retains considerable discretion in determining whether waiver or abatement of late payment penalties is appropriate. *Media Graphics, Inc. v. Dir., Div. of Taxation,* 7 *N.J.Tax* 23, 33 (Tax 1984), *aff'd o.b.,* 8 *N.J.Tax* 321 (App.Div.1986) (per curiam). The Director may "remit or waive the payment of the whole or any of any penalty ... [,] including any such penalty ... with respect to deficiency assessments made pursuant to [*N.J.S.A.*] 54:49–6," provided "the failure to pay any such tax when due is explained to [his or her] satisfaction." *N.J.S.A.* 54:49–11a. The Director's exercise of discretion in granting or denying waiver should not be disturbed unless found to be manifestly arbitrary or unreasonable. *Kasot, Inc. v. Dir., Div. of Taxation,* 24 *N.J.Tax* 588, 599 (Tax 2009) (citing *Patel v. Dir., Div. of Taxation,* 13 *N.J.Tax* 509, 515–16 (Tax 1993)).

Circumstances under which discretionary waiver may be appropriate are contained in the promulgated regulations. *N.J.A.C.* 18:2–2.7(b) provides waiver or abatement "will be granted if the taxpayer can show reasonable cause for failure to file any return

or pay any tax when due and makes full payment of the taxes due." Subparagraph (c) provides examples of what constitutes "reasonable cause." For example, "a pending action or proceeding for judicial determination may constitute reasonable cause, until the time in which the taxpayer has exhausted its administrative or judicial remedies," so long as the "action or proceeding involves a question or issue affecting whether or not the . . . entity is required to . . . pay tax" and "[t]he action or proceeding is not based on a position which is frivolous[.]" *N.J.A.C.* 18:2–2.7(c)4. Also, "[a]ny other cause for delinquency which would appear to a person of ordinary prudence and intelligence as a reasonable cause for delay and which clearly indicates an absence of willful neglect may be determined to be reasonable cause." *N.J.A.C.* 18:2–2.7(c)5. Finally, subparagraph (d)1 provides:

> In addition to any relevant grounds for reasonable cause as exemplified in (c) above, circumstances that indicate reasonable cause and good faith with respect to the substantial understatement or omission of tax, where clearly established by or on behalf of the taxpayer, may include . . . [a]n honest misunderstanding of fact or law that is reasonable in light of the experience, knowledge and education of the taxpayer[.]

The regulations warn "[i]gnorance of the law . . . will not be considered as a basis for reasonable cause." *N.J.A.C.* 18:2–2.7(c)5. Rather, "[r]easonable cause and the absence of willful neglect may be determined to exist only where the taxpayer has acted in good faith." *N.J.A.C.* 18:2–2.7(e). Therefore, a taxpayer is not eligible for waiver of late payment penalties if the understatement or omission was due to willful neglect. *Ibid.*

The determination of whether plaintiffs established reasonable cause, as defined, turns on the facts. Here, the determination letters sent to plaintiffs by the Director stated that upon payment of the taxes due, the late payment penalties would be abated.[4] When plaintiffs challenged the Director's tax assess-

---

[4] We note GS's Final Determination letter more clearly expresses: "You have shown reasonable cause in this matter and upon receipt of your payment . . . an abatement . . . of the 5% Late Payment Penalty will be granted."

ments instead of paying the determined tax, the Director's position was fixed to refuse to abate any late payment penalties.

Judge Kuskin determined the Director's position was manifestly unreasonable regarding the penalties imposed upon the imputed income resulting from the inter-company transfers discussed above. *United Parcel Serv., supra,* 25 *N.J.Tax* at 50. Finding the existing "case law ... could be interpreted to suggest that the cash management system utilized by the UPS Group may not have generated loans, and no case law existed with respect to the tax treatment of the accrued but unpaid business services fee amounts[,]" Judge Kuskin concluded plaintiffs' challenge to the characterization of the cash management transfers as loans was based on "genuine questions of fact and law ... concerning the propriety of the Director's imputation of interest." *Ibid.*

Giving deference to supported factual findings made by the Tax Court following trial, we conclude the legal application of the waiver provision was correct. The tax consequences of the UPS Group cash management system presented an issue of first impression in New Jersey. In fact, Judge Kuskin noted the transfers between the subsidiaries and America

> did not satisfy most of the factors [discussed in reported] cases to indicate an intention to make a loan. The cash sweeps were not documented as loans, America provided no security for repayment, no repayment schedules were established, and plaintiffs made no demands for repayment other than for payment of their respective expenses and obligations.
>
> [*Id.* at 22.]

Also, "[t]he case law discussed above could be interpreted to suggest that the cash management system utilized by the UPS Group may not have generated loans[.]" *Id.* at 50. However, when considering the transactions as if between unrelated parties, a scenario plaintiffs likely would not think to consider, the Director's characterization as loans was upheld.[5] *Id.* at 21–23.

---

[5] The Director does not offer a separate argument attributing error to the conclusion regarding waiver of late payment penalties to the accrued but unpaid business service fees due from America to GS. GS's accounting expert's opinion

The Director's contention that plaintiffs failed to establish "reasonable cause" contradicts the determination made in the Division's Final Determination letters stating plaintiffs would be granted an abatement "[u]pon receipt of payment in the amount of" the assessed tax liabilities. *See N.J.A.C.* 18:2–2.7(b) (stating "[a]n abatement will be granted if the taxpayer can show reasonable cause ... and makes full payment of the taxes due"). We reject a notion suggesting good faith in taking a tax reporting position, which demonstrates reasonable cause, is obviated when a taxpayer files a challenge to the Division's tax assessments rather than accepting them. Establishment of the required reasonable cause to abate the penalties may still be shown. Here, plaintiffs satisfied the assessed CBT following entry of judgment by the Tax Court. The timely filed appeals triggered *N.J.S.A.* 54:51A–15d, which provides "a complaint filed in the Tax Court shall stay the collection of the tax at issue therein and the enforcement thereof by entry of any judgment pursuant to [*N.J.S.A.*] 54:49–12."

We also reject as lacking merit the Director's assertion plaintiffs failed to act in good faith as required by *N.J.A.C.* 18:2–2.7(e), because they "did not cooperate" during the audits, administrative conference, or discovery. *R.* 2:11–3(e)(1)(E). We find the argument mischaracterizes the Tax Court's opinion, which instead found plaintiffs had demonstrated resistance to the Division's efforts regarding a different issue unrelated to the cash manage-

---

applying the two-month safe-harbor provision of *N.J.A.C.* 18:7–5.10(a)(5) (stating interest is not required to be charged on inter-company trade receivables prior to the first day of "the third calendar month" following the transaction), was accepted by Judge Kuskin as reasonable. Plaintiffs did not prevail on this issue because GS failed to present proofs showing the length of time each monthly obligation remained unpaid. *United Parcel Serv., supra,* 25 *N.J.Tax* at 29. Nevertheless, the inability of the taxpayer to meet its burden did not detract from the "thorough and reasonable" reporting position evincing reasonable cause for abatement. Accordingly, we discern no basis to interfere with Judge Kuskin's finding the tax consequences turned on genuine disputes of fact and unsettled questions law concerning the propriety of the Director's imputation of interest. *Id.* at 50.

ment system or the accrued business services fees. *United Parcel Serv., supra,* 25 *N.J.Tax* at 41–47.

■ Similarly unavailing is the Director's argument plaintiffs should have requested the Division's guidance on the tax consequences of its cash management system and the fee arrangement between GS and America. The argument incorrectly bootstraps the statutory good faith requirement to wholesale acceptance of the Division's taxation determinations. A corporation's officers must act to protect the financial interests of its shareholders. *Stewart v. Harris Structural Steel Co.,* 198 *N.J.Super.* 255, 271, 486 *A.*2d 1265 (App.Div.1984).

The Director next asserts the Tax Court's "waiver" of the imposed tax amnesty penalties was error in light of the plain statutory language, which provides these penalties are not waivable. We first examine the statutory provisions at issue.

Tax amnesty refers to a state administrative revenue-generating program, permitting taxpayers to fully satisfy existing outstanding tax obligations during a specified period of time in exchange for a waiver of assessed penalties and interest. *N.J.S.A.* 54:53–17, –18. An additional five percent penalty attaches to assessments which are not satisfied during the amnesty period.[6] *N.J.S.A.* 54:53–17b, –18b. The two amnesty statutes specifically state the amnesty penalty assessment "shall not be subject to waiver or abatement[.]" *Ibid.* The Director's position on appeal hinges on this requirement.

■ Judge Kuskin did not conclude the amnesty penalties must be abated or waived. Had he done so, we agree that would be contrary to the clear statutory pronouncement. Rather, he was persuaded by plaintiffs' argument that the amnesty penalty

---

[6] Amnesty periods were established by *N.J.S.A.* 54:53–17a (applying to tax liabilities arising from returns due on or after January 1, 1987, and prior to January 1, 1996), and –18a (applying to tax liabilities arising from returns due on or after January 1, 1996, and prior to January 1, 2002).

was inapplicable to the facts of the case. *United Parcel Serv.,* *supra,* 25 *N.J.Tax* at 51–54.

"When called on to interpret a statute, our overriding goal must be to determine the Legislature's intent." *Jersey Cent. Power & Light Co. v. Melcar Util. Co.,* 212 *N.J.* 576, 586, 59 *A.*3d 561 (2013) (internal quotation marks and citations omitted). "Our role 'is to determine and effectuate the Legislature's intent.'" *Ibid.* (quoting *Bosland v. Warnock Dodge, Inc.,* 197 *N.J.* 543, 553, 964 *A.*2d 741 (2009)). We examine the plain language of the statute, giving the words used "their ordinary meaning and significance[.]" *Di-Prospero v. Penn,* 183 *N.J.* 477, 492, 874 *A.*2d 1039 (2005) (citation omitted). In the event of ambiguity, we seek further guidance of the Legislature's intent from the statute's legislative history. *Praxair Tech., Inc. v. Dir., Div. of Taxation,* 201 *N.J.* 126, 136, 988 *A.*2d 92 (2009) (citations omitted); *Oberhand v. Dir., Div. of Taxation,* 193 *N.J.* 558, 568, 940 *A.*2d 1202 (2008).

As noted, the amnesty statutes apply to "a taxpayer who has failed to pay any State tax on or before the day on which the tax is required to be paid[.]" *N.J.S.A.* 54:53–17, –18. Here, each plaintiff timely filed all applicable tax returns and paid all taxes computed to be due for the audited tax periods, calendar years 1991 through 1995. The assessments to which the Director seeks to apply the amnesty penalties were not issued after a general review of any annual tax return, but rather following a prolonged audit resulting in the Division's determinations of additional tax liability on April 4, 2003. These circumstances do not neatly fit into the statutory language, which suggests a taxpayer's knowledge of a tax due but unpaid. Plaintiffs argue an ambiguity existed regarding the application of the statutory language to these facts, thus requiring review of legislative history.

In hearings regarding the adoption of the 1996 amnesty statute, *N.J.S.A.* 54:53–17, the State Treasurer explained "the bill's penalties will not be applied to deficiencies assessed pursuant to a question of law or fact uncovered through routine audits of taxpayers otherwise in compliance with the filing and payment

requirements of State taxes." *Assembly Appropriations Comm. Statement to Assembly Comm. Substitute for A. 1420* (Feb. 5, 1996); *Senate Budget and Appropriations Comm. Statement to Senate Comm. Substitute for S. 675* (Feb. 15, 1996). Judge Kuskin concluded the Division's determination in this matter illustrates the exception articulated by the State Treasurer, as it presented a taxpayer who took a reasonably debatable reporting position, in full compliance with established law, and was later found to owe additional tax liability following an audit.

Similar language is not found within the legislative history of *N.J.S.A.* 54:53–18. *See Assembly Appropriations Comm., Statement to A.2001* (Mar. 4, 2002); *Senate Budget and Appropriations Comm. Statement to Senate Comm. Substitute for S. 16 and 404* (Feb. 21, 2002). Nevertheless, Judge Kuskin concluded "because the language of *N.J.S.A.* 54:53–17b and –18b is identical, the two statutes should be interpreted to have the same meaning and applicability." *United Parcel Serv., supra,* 25 *N.J.Tax* at 53.

It is too simplistic to suggest plaintiffs should have known of the tax liability, just because the Director's position was eventually upheld by the Tax Court. Judge Kuskin's opinion details the facts supporting plaintiffs' and the Director's position. The court then performed an original analysis of the tax consequences of what it found to be a unique situation and concluded the Director's position was not unreasonable. The issues in this case were uncovered through routine audits of plaintiffs. The facts did not involve fraudulently filed returns, deliberate under-reporting of income, falsely claimed deductions, or even a business decision not to satisfy a tax obligation in favor of retaining the funds. Rather, the tax consequences of the cash management system were not readily established or certain and plaintiffs' position was reasonable in light of reported authority addressing a similar issue and concluding the transfers were not loans. The distinctions drawn between UPS's cash management system and those described in prior reported cases, which ultimately supported the Director's loan characterization, revealed a matter of first impression.

Based on this unsettled state of whether plaintiffs had a legal obligation to pay certain taxes, Judge Kuskin concluded the tax liability was only discovered in the audit, making the amnesty statute's directive inapplicable. *United Parcel Serv., supra*, 25 *N.J.Tax* at 53. We agree and conclude the determination was not in error.

Further, Judge Kuskin concluded because the Division's assessments were issued after the close of the amnesty period, any additional taxes deemed owed were not "eligible to be satisfied" during the amnesty period as contemplated by *N.J.S.A.* 54:53–17b and –18b. *Id.* at 53–54, stating:

> I construe the phrase "tax liabilities eligible to be satisfied" as used in *N.J.S.A.* 54:53–17b and –18b to refer to liabilities which, during the applicable amnesty period, were known to the taxpayer or which, by reasonable inquiry, could have been known.... If, during an amnesty period, a taxpayer, in good faith, did not know and, by reasonable inquiry, could not have known that additional taxes were due, or that the Director claimed additional taxes were due, then those taxes were not "eligible to be satisfied" during the amnesty period.
>
> [*Id.* at 54.]

The Director's interpretation requires automatic imposition of the five percent amnesty penalty to a tax assessment issued after the close of the amnesty period, on tax returns filed within the period of amnesty. We defer to the finding of the Tax Court that plaintiffs "in good faith, did not know and, by reasonable inquiry, could not have known that additional taxes were due, or that the Director claimed additional taxes were due" during the amnesty period, until they received the Director's assessment, issued after the amnesty period expired. *Ibid.* Although the controversy was on-going and the audits extensive, tax liability was not finally determined until the assessments issued.

Following our review of these two issues, we find no error in the application of the law based upon the record as discussed by Judge Kuskin in his written opinion.

Affirmed.