**NOT FOR PUBLICATION WITHOUT THE**
**APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-3904-18T1

FERRELLGAS PARTNERS, LP,

    Plaintiff-Appellant,

v.

DIRECTOR, DIVISION OF
TAXATION,

    Defendant-Respondent.

_____

Argued December 16, 2020 – Decided January 13, 2021

Before Judges Sumners and Geiger.

On appeal from the Tax Court of New Jersey, Docket No. 7051-2014.

Kyle O. Sollie argued the cause for appellant (Reed Smith LLP and Jonathan E. Maddison (Reed Smith LLP) of the Pennsylvania bar, admitted pro hac vice, attorneys; Jonathan E. Maddison and Kyle O. Sollie, on the briefs).

Michael J. Duffy, Deputy Attorney General, argued the cause for respondent (Gurbir S. Grewal, Attorney General, attorney; Melissa H. Raksa, Assistant

Attorney General, of counsel; Michael J. Duffy, on the briefs).

Vinson & Elkins, LLP, and Clifford Thau, Marisa Antos-Fallon, and Bryan Hogg, (Vinson & Elkins, LLP) of the New York bar, admitted pro hac vice, attorneys for amicus curiae Energy Infrastructure Council (George C. Hopkins, Clifford Thau, Marisa Antos-Fallon, and Bryan Hogg on the brief).

PER CURIAM

Plaintiff Ferrellgas Partners, L.P. appeals from December 7, 2018 and April 1, 2019 Tax Court orders granting partial summary judgment to defendant Director of the Division of Taxation (Division), upholding the denial of a refund of the partnership filing fees (PFF) that plaintiff paid for tax years 2009 through 2011. We affirm.

N.J.S.A. 54A:8-6(b)(2)(A) requires "[e]ach entity classified as a partnership for federal income tax purposes," that has more than two owners, "having any income derived from New Jersey sources," to pay "a filing fee of $150 for each owner with an interest in the entity, up to a maximum of at $250,000," when filing its informational tax return. Because it had more than 67,000 owners, plaintiff paid the maximum $250,000 PFF for tax years 2009 through 2011.

Plaintiff challenges the constitutionality of the PFF, arguing it violates the Dormant Commerce Clause (DCC) of the United States Constitution because it is not fairly apportioned and discriminates against interstate commerce, and is not internally consistent.[1] It further contends that the PFF is a tax, not a uniform regulatory fee, imposed on interstate commerce, that does not satisfy the internal consistency standard. Plaintiff argues that this court should remand to the Tax Court to cure these constitutional defects through three-factor apportionment.

The Statutory and Regulatory Framework

An entity "classified as a partnership for federal income tax purposes" is required to file an informational tax return setting forth all items of income and loss if the entity has "a resident owner" or "any income derived from New Jersey sources." N.J.S.A. 54A:8-6(b)(1). The return must identify the "name and address of each partner, member, or other owner of an interest in the entity however designated." Ibid.

_____

[1] The Commerce Clause provides: "Congress shall have Power To . . . regulate Commerce with foreign Nations, and among the several States, and with Indian tribes." U.S. Const. art. I, § 8, cl. 3. "Although the Constitution does not in terms limit the power of States to regulate commerce, we have long interpreted the Commerce Clause as an implicit restraint on state authority, even in the absence of a conflicting federal statute." United Haulers Ass'n v. Oneida-Herkimer Solid Waste Mgmt. Auth., 550 U.S. 330, 338 (2007). This implied restraint on state authority to regulate interstate commerce is commonly known as the Dormant Commerce Clause.

A-3904-18T1

The Business Tax Reform Act (BTRA), L. 2002, c. 40, was enacted to address large and multi-national corporations that earn billions in New Jersey source income but pay minimal taxes. Sponsor's Statement to A. 2501 51-52 (June 6, 2002). This was accomplished, in part, by "establish[ing] a revenue stream that captures enforcement and processing costs that New Jersey incurs from processing the vast network of limited liability companies and partnerships." Id. at 52. The BTRA was also intended to "affect[] the tracking of the income of business organizations, like partnerships, that do not themselves pay taxes but that distribute income to their owners, the eventual taxpayers." Assembly Budget Comm. Statement to A. 2501 1 (June 27, 2002).

To that end, the Legislature considered imposing a filing fee of $150 per owner on partnerships and entities classified as partnerships for federal income tax purposes, up to a maximum of $250,000 per tax year. A. 2501 (June 6, 2002). The bill was subsequently amended to "[c]larify that the [PFFs] only apply only to partnerships that derive income from New Jersey." Assembly Budget Comm. Statement to A. 2501 13; see also A. 2501 (June 28, 2002). "For pass-through entities that have income from New Jersey sources and more than two members, the bill establishes an annual $150 per owner filing fee, capped

at $250,000 per entity annually." Assembly Budget Comm. Statement to A. 2501 7.

The Office of Legislative Services estimated that PFF would increase General Fund revenues by $40-$60 million in fiscal year 2003 and $28-$40 million in fiscal years 2004 and 2005. Legislative Fiscal Estimate to A. 2501 2 (Sept. 13, 2002).

N.J.S.A. 54A:8-6 was amended to include subsection (b)(2)(A), which imposes the PFF. It provides:

> Each entity classified as a partnership for federal income tax purposes, other than an investment club, having any income derived from New Jersey sources, including but not limited to a partnership, a limited liability partnership, or a limited liability company, that has more than two owners shall at the prescribed time for making the return required under this subsection make a payment of a filing fee of $150 for each owner of an interest in the entity, up to a maximum of $250,000.
>
> [N.J.S.A. 54A:8-6(b)(2)(A).]

The regulations initially proposed by the Division to implement the PFF included "an apportionment methodology for partnerships . . . liable for the [PFF] . . . that have partners . . . that never enter New Jersey." 35 N.J.R. 1573(a) (Apr. 7, 2003). The Division later explained that "only partners or professionals without nexus would be subject to apportionment." 35 N.J.R. 4310(a) (Sept. 15,

5

2003). Accordingly, the regulations provide that the PFF will be apportioned if a partnership has an office outside New Jersey and nonresident partners with no nexus to this State. N.J.A.C. 18:35-11.2(b). When applicable, apportionment is computed in accordance with N.J.A.C. 18:35-11.2(c), which provides:

> The total apportioned partnership fee is equal to the sum of:
>
> 1. The number of resident partners multiplied by $150.00; plus
>
> 2. The number of nonresident partners with physical nexus to New Jersey multiplied by $150.00; plus
>
> 3. The number of nonresident partners without physical nexus to New Jersey multiplied by $150.00 and the resulting product multiplied by the corporate allocation factor of the partnership.

The Tax Court provided the following examples:

> If a partnership had all resident partners, the fee is $150 times the number of partners. N.J.A.C. 18:35-11.6, Ex. 1. If a Connecticut partnership, which had an office in Connecticut and New Jersey, and New Jersey source income, had 4 partners with no physical nexus to New Jersey, and the partnership's allocation factor was 0.4, the fee would apportioned by multiplying 4 x $150 x 0.4 or $240. Id., Ex. 2. If a limited partner of a New Jersey partnership was a California limited partnership which stored property in the New Jersey partnership's office, had an allocation factor of 10%, and received $1 million in distribution from the New Jersey partnership, then the California limited partner would also be liable, as a partnership, for the fee because it has New Jersey

A-3904-18T1

source income. <u>Id.</u>, Ex. 3. Assuming all 15 partners of the California limited partnership had no physical nexus to New Jersey, the fee would be 15 x $150 x 0.1 or $225.

In a Technical Bulletin issued in 2005, the Division explained the amount of the PFF is "generally determined by the number of K-1s filed by . . . the partnership, including when a . . . tiered partnership or pass-through entity is involved." TB-55 (Apr. 6, 2005). As to non-resident partners, "[i]f the partnership has income earned outside New Jersey, the filing fee for non-resident partners that do not have physical nexus with New Jersey may be apportioned based on New Jersey source income," determined by applying the corporate allocation factor. <u>Id.</u> at 2. The PFF would not apply to partnerships that had "all . . . operations and facilities . . . located outside New Jersey." <u>Ibid.</u> The Technical Bulletin also stated that "[i]ncome cannot be allocated outside New Jersey (all income is New Jersey source income) if the partnership has no place of business outside New Jersey." <u>Ibid.</u>

The Tax Court's Findings of Fact

Plaintiff is a publicly traded limited partnership incorporated in Delaware that is headquartered and commercially domiciled in Kansas. Partnership interests in plaintiff were regularly traded on the New York Stock Exchange. Plaintiff's "general partner is Ferrellgas Inc., a wholly owned subsidiary of

7

Ferrell Companies, Inc." According to its New Jersey partnership returns (N.J.-1065), plaintiff's "limited partners are (1) the public 'shareholders,' (2) Ferrell Companies, Inc., (3) Ferrell Companies, Inc., dba Ferrell Propane, Inc., and (4) Jef Capital Management, Inc."

In tax year 2009, plaintiff had 67,019 partners, of whom 2542 were residents or partners with nexus to New Jersey. In tax year 2010, plaintiff had 66,835 partners, of whom 2423 were residents or partners with nexus to New Jersey. In tax year 2011, plaintiff had 82,047 partners, of whom 2927 were residents or partners with nexus to New Jersey.

Plaintiff is the 99% sole limited partner in an affiliated Delaware limited partnership, Ferrellgas, LP (the Operating Partnership). In turn, Ferrellgas Inc. is the Operating Partnership's 1% general partner. Plaintiff facilitates investments by the investing public in the Operating Partnership. The Operating Partnership distributes propane tanks nationwide under the label "Blue Rhino." Plaintiff has a storage facility in New Jersey. Three other locations handle service and delivery calls.

For tax years 2009 through 2011, plaintiff reported the following as allocable to New Jersey:

> (1) property (real and intangible) valued at $11,499,191; receipts of $20,380,367; payroll of

$3,434,904, and a total apportionment of 1.1680% for tax year 2009; (2) property (real and intangible) valued at $11,418,129; receipts of $19,077,148; payroll of $3,229,104; and a total apportionment of 1.0550% for tax year 2010; and, (3) property (real and intangible) valued at $11,510,505; receipts of $21,519,209; payroll of $2,887,867; and a total apportionment of 1.0161% for tax year 2011.

This was the same allocation factor used by the Operating Partnership. Plaintiff also reported New Jersey sourced net partnership income of $942,513 in tax year 2009; $597,413 in 2010; and $190,966 in 2011.

The distributive share of New Jersey source partnership income from the Operating Partnership was $1,208,149; $898,503; and $477,459, respectively, for tax years 2009 to 2011. These were offset with plaintiff's ordinary losses from trade or business for each tax year. The court noted that the reported distributive share of New Jersey source partnership income differed from that reported on the K-1 forms issued to plaintiff by the Operating Partnership in tax years 2009 to 2011.

Plaintiff paid the maximum $250,000 PFF in tax years 2009 to 2011. It then sought a full refund of the PFF it had paid in those years, claiming its distributive share of partnership income from the Operating partnership was not reportable income. Plaintiff filed amended NJ-1065s that eliminated the New Jersey source income it had previously reported.

The Division denied plaintiff's refund claims, determining that "pursuant to N.J.A.C. 18:35-1.3(d)(6), a tiered partnership must 'take into account its distributive share of partnership income' and cannot thereafter 'reallocate' it." Because the Operating Partnership had allocated income to New Jersey, plaintiff could not reallocate it.

Plaintiff filed a complaint against the Director and moved for partial summary judgment, contending the PFF is a tax that violated the DCC under three of the four criteria enumerated in Complete Auto Transit, Inc. v. Brady, 430 U.S. 274 (1977), because the PFF: (1) discriminated against interstate commerce; (2) was not fairly apportioned; and (3) was not fairly related to the services provided by the Division. In support of its claims, plaintiff provided the following data obtained from the New Jersey Department of Treasury:

> (1) The New Jersey source income reported by all partnerships for tax years 2009-2011 was $26,400,624,146; $42,211,064,190; and $11,679,724,687 respectively.
>
> (2) The partnership filing fees received from all entities in tax years 2009-2011 totaled $44,703,658; $47,109,396; and $47,461,768 respectively.
>
> (3) The salaries paid to all employees of the Division of Revenue who worked on processing [Gross Income Tax] returns for [fiscal years] 2009-2011 totaled $22,933,753; $18,373,397; and $20,101,294.

A-3904-18T1

(4) In each tax year 2009-2011, Taxation processed the following number of NJ-1065s: 168,628; 175,517; and 182,745. For each of those tax years, the total returns filed (for all types of income taxes) were about 4.7 to 4.9 million.

(5) All amounts collected as the filing fee were deposited into the General Fund, as part of the [Corporate Business Tax], a category in the General Fund.

While plaintiff did not challenge the validity of the regulations, it claimed they did not cure the partnership levy through apportionment. Plaintiff asserted the Division could cure the DCC violation by apportioning the $250,000 maximum fee. The Tax Court concluded "[t]here was no fee apportionment for [plaintiff] because the number of its domestic or in-[s]tate partners caused the fee to reach the $250,000 cap."

The Division cross-moved for partial summary judgment, arguing the PFF "is a regulatory fee intended to defray administrative costs" associated with "processing, examining, and auditing" plaintiff's partner and partnership returns, and thereby valid under Am. Trucking Ass'ns v. Mich. Pub. Serv. Comm'n, 545 U.S. 429 (2005) (ATA-Michigan). The Division asserted "the court need only examine whether the amount [of the PFF] is excessive when the benefits to a taxpayer are compared to the State's interests under Pike v. Bruce Church, Inc., 397 U.S. 137 (1970)." The Division maintained the PFF was not excessive since

11

the fee equates to less than $4 per partner. Alternatively, the Division argued that "even if the PFF is deemed a tax, it still does not violate the DCC because it is": (1) "fairly apportioned under its regulations"; (2) non-discriminatory since it applies to any partnership; and (3) co-relative to the services provided by the State (since plaintiff maintained storage facilities in New Jersey and was able to do business here). The Division noted that applying the apportionment sought by plaintiff would reduce the fee to less than $1 per partner, an unreasonable result.

The Tax Court employed the following test for determining the constitutionality of a state-imposed levy under the DCC:

> (1)  If a statute discriminates facially or in practical effect, it is invalid. The challenger has the burden to prove discrimination either way. If discrimination is proven, the State must then justify the statute vis-à-vis the local benefits, and lack of nondiscriminatory alternatives. This is the "less stringent" test, albeit still a heightened scrutiny.
>
> (2)  Generally, a tax is subject to a stricter test, i.e., it must also be internally consistent, and thus, must be fairly apportioned. The challenger has the burden to prove the lack of apportionment. The State must then justify the statute as being nondiscriminatory, or that it cannot achieve a more "accurately apportioned fee." A State need not provide both a credit for, and an apportionment of, the challenged tax.

A-3904-18T1

(3)    If a statute or regulation is not discriminatory facially or in practical effect, then the statute may need to be examined under the burden-benefit balancing test if the excessiveness of the fee burdens interstate commerce.  It would appear that the same initial burden of proof is on the challenger to prove discrimination, and then the excessiveness of the burden on interstate commerce when compared to the governmental benefit, after which the burden will shift to the State in proving the opposite.

(4)    The label of the levy is irrelevant to decide whether State law or regulation discriminates against interstate commerce.

(5)    The DCC protection applies to residents and non-residents.

(6)    For purposes of the DCC analysis, flat fees are sometimes treated as taxes, thus subject to the four-part test of Complete Auto, but sometimes not, especially if the levy is found to be non-discriminatory and applies only to intrastate transactions.

The court first addressed whether interstate commerce was burdened by the PFF.  Recognizing that the Operating Partnership was the entity engaged in nation-wide propane sales, and had not joined in challenging the PFF, the Tax Court found:

> [Plaintiff]'s activity . . . is its investment in its affiliate directly or indirectly, which in turn facilitates (in part or otherwise) the earning of income by the Operating Partnership.  Stated differently, the "commerce" being impacted is [plaintiff]'s provision of capital, and its facilitation of the provision of capital by residents and

13

nonresidents, to the Operating Partnership, directly or indirectly, which investment enables [plaintiff] to earn income from the Operating Partnership, thus, to earn New Jersey source income. Such commerce could be interstate because [plaintiff] is a foreign partnership as are some of its partners, thus, capital contributions from such partners, when infused into the Operating Partnership, and used in the latter's activities which are both in and out-of-State, can implicate interstate commerce.

[(citations omitted).]

The court found that "simply because [plaintiff] may be . . . involved in interstate commerce does not mean that the DCC is automatically implicated, and without more, render a levy, regardless of whether it is labeled a fee or a tax," unconstitutional.

The court then focused on whether the PFF "discriminates against [plaintiff]'s investment activity by improperly favoring investment activity . . . in a local business, operation, or activity, to the disadvantage of that same investment activity in an out-of-State business, operation or activity." It concluded that the Legislature "wanted to track New Jersey sourced income earned or derived by partnerships engaged in business (as opposed to small investment clubs), since partnerships are not themselves taxed, and instead pass-through the income earned/derived to partners, who/which are taxed."

The court determined "that the activity or transaction for which the fee is imposed is based on the governmental activity of processing/reviewing returns," thereby "regulating partnerships by tracking their New Jersey source income." This "regulation or governmental activity [was] a purely intrastate activity and is not commerce, let alone interstate commerce."

The court noted that "the Legislature's primary concern was to ensure that the pass-through New Jersey-derived income by large pass-through entities be captured," creating an "urgent need" to track "such income, which then required a review of these entities' informational returns and its members' tax returns." Hence, "the Legislature used the filing fee as a mechanism to pay such costs." The court reiterated that "the fee is imposed only if the partnership derives New Jersey source income." Considering these circumstances, the court held that the PFF "does not implicate the DCC under ATA-Michigan even if it is imposed on an interstate commerce participant, such as [plaintiff]," and granted partial summary judgment to the Division.

The court next addressed whether the PFF facially discriminated against plaintiff or its activity. It found N.J.S.A. 54A:8-6(b)(2)(A) "provides no 'home' based advantage, that is, one which favors local over foreign partnerships." The court explained that "the PFF is not imposed based on the location of the

partnership, or the nature/scope of its particular business activity." Instead, "the PFF is imposed if the partnership has New Jersey source income to be reported on an NJ-1065." Thus, "New Jersey is not exercising any economic protectionism by unduly favoring in-State activities or transactions over those same activities or transactions conducted interstate." The court found that "[t]he PFF does not bar any pass-through entity from earning income/loss outside New Jersey, nor does it incentivize or promote local business over out-of-State business. To the contrary, domestic partnerships pay the same PFF, and are subject to the same $250,000 cap as non-domestic partnerships." Therefore, N.J.S.A. 54A:8-6(b)(2)(A) "is facially neutral and regulates even-handedly."

The court also considered whether the PFF had a disparate impact on investment activity, resulting in an impermissible burden on interstate commerce by making out-of-state entities or businesses "pay more than their fair share of a State-imposed levy or by making it so expensive, disproportionately for them," to engage in business in New Jersey. The court found it did not, concluding that "[o]ut-of-[s]tate partnerships earning New Jersey source income/loss are not paying any more than an in-[s]tate partnership" with the same income level "since each will pay the same PFF and the same cap amount (if each had more than 1,667 partners)."

The court explained that the "DCC 'does not seek to relieve those engaged in interstate commerce from their just share of state tax burden even though it increases the cost of doing business.'" (Quoting ATA-Michigan, 545 U.S. at 438.) It noted that the PFF paid by plaintiff is "extremely low (if the $250,000 cap is divided by the number of partners), as compared to a smaller partnership." Thus, "the effect on interstate commerce would be minimal or only incidental."

The court further found plaintiff did not provide "any proof that its interstate commerce is unduly burdened." It rejected plaintiff's "resort to the mechanical application of the hypothetical math under the internal consistency component of Complete Auto, [as] a substitute for its burden of proving, at least prima facie, that the PFF results in a disparate impact on its interstate investment activity."

The court distinguished both Am. Trucking Ass'ns v. Scheiner, 483 U.S. 266 (1987) and Am. Trucking Ass'ns v. State, 180 N.J. 377 (2004) (ATA-NJ), where the plaintiffs presented proof of disparate impact. It noted that in ATA-Michigan, the Supreme Court upheld a "flat $100 fee imposed only upon intrastate transactions," finding it non-discriminatory since it taxed "only purely local activity" and not transactions that took place outside the State. 545 U.S. at 434, 437. The Court reached this conclusion even if all States charged similar

fees, resulting in the trucker paying much higher aggregate fees, since those higher fees were imposed "only because it engages in local business in all those States." Id. at 438.

The Tax Court rejected the assertion "that any levy payable by an interstate commerce participant is automatically suspect unless apportioned." Rather, the focus "is whether a levy discriminates facially or practically." To that end, the internal consistency test "was formulated to insure that 100% of income earned by a taxpayer in a business operating in multi-states is divided among the [s]tates in which the income is earned, so that the total tax paid by the multi-state business is equal to the tax on 100% of income." Accordingly, multi-state income tax is not implicated by the PFF.

The court was "not persuaded that simply because the PFF is deposited into the general funds, it is a flat tax that must be apportioned pursuant to Complete Auto. Both fees and taxes raise revenues, just as they both impose a cost on a business."

The court recognized that if Scheiner applies, "an unapportioned levy must be internally consistent," citing ATA-NJ, 180 N.J. at 397. Here, N.J.S.A. 54A:8-6(b)(2) "imposes the PFF for a purely intrastate reason." "Therefore, Scheiner would not automatically apply."

The court further explained that since the statute "is neutral facially, and there is no proof of any disparate impact or undue burden on [plaintiff's] investment activity due to the PFF," the court is neither required to apply the internal or external consistency tests, nor determine "whether the PFF amount is fairly related to the services provided by the State."

Based on these findings, the court denied plaintiff's motion for partial summary judgment. Therefore, "it [did] not address the validity of [the Division's] regulations which permit an apportionment of the PFF."

The court also concluded that it did not need to a determine if Pike applied. Even if Pike did apply, plaintiff had not established that the PFF imposes an excessive burden on interstate commerce.[2]

On the other hand, the Division did not provide any independent information to show that the fee of $150 per partner or $250,000 cap is not excessive. While it contended that salary totals did not reflect the cost of employee benefits, the Division provided no supporting data. "Since neither

---

[2] Plaintiff provided data showing that the revenues raised by the PFF were roughly double the $19 million in salaries paid by the Division. The court noted this equated to a modest $4 per-partner fee ($19 million in salaries ÷ 4.7 million returns = $4 per return), which did not prove that the PFF was an excessive burden on plaintiff's investment activity. Moreover, government costs were not clearly limited to salaries.

[plaintiff] nor [the Division] provided any data, evidence or other proof on why the PFF fails or passes the Pike balancing [test], should that test even apply here," the court found it would be inappropriate to grant summary judgment to either party on this issue.

Based on these findings, the court determined that "N.J.S.A. 54A:8-6(b)(2) does not implicate or violate the DCC because it imposes the PFF to defray the costs of a purely intrastate governmental activity, which is to review partnership and partner returns, in order to track whether New Jersey sourced income/loss was reported to New Jersey." "[B]ecause the PFF does not implicate the DCC," the court granted partial summary judgment to the Division.

Following the Tax Court's decision, plaintiff withdrew any remaining claims and requested that final judgment be entered. On April 1, 2019, the court issued an order entering final judgement upholding the denial of the PFF refund. This appeal followed.

Plaintiff raises the following points for our consideration:

POINT I

THE LEVY VIOLATES THE COMMERCE CLAUSE OF THE UNITED STATES CONSTITUTION.

A. The Levy Is Not Fairly Apportioned—In Fact, It Is Not Apportioned At All.

20

B. The Levy Discriminates Against Interstate Commerce. This Is Proved By The Fact That The Levy Is Not "Internally Consistent"—A Standard Developed By The United States Supreme Court To Test For Discrimination.

POINT II

THE NEW JERSEY TAX COURT AVOIDED THESE CONSTITUTIONAL TESTS BY CONCLUDING THAT THE PARTNERSHIP LEVY IS A WHOLLY IN-STATE REGULATORY FEE THAT DOES NOT "IMPLICATE" INTERSTATE COMMERCE. THE TAX COURT ERRED.

A. Contrary To The Tax Court's Conclusion, The Partnership Levy Was A Revenue-Raising Measure, Not A Regulatory Fee.

1. The Partnership Levy Was Intended To Raise Revenue.

2. The Record Shows That The Partnership Levy Was Not Intended To Function, And Did Not Actually Function, As A "Regulatory Fee."

(a) The Record Shows That The Partnership Levy Is Not A Uniform Charge For Return Processing—Whether Computed "Per Owner" Or Otherwise.

i. The Evidence Is Clear That The Levy Is Not A Uniform Charge For Return Processing.

ii. This Lack Of Uniformity Contrasts With Other Regulatory Fees That Have Been Sustained Because They Are, In Fact, Uniform Charges For Government Services.

21

(b) The Record Shows That The Partnership Levy Does Not Correlate In Any Way With Agency Costs To Process Returns. In Fact, No Effort Was Ever Made To Do So Because The Levy Is Simply A Revenue-Raising Measure.

3. Since The Partnership Levy Is A Revenue-Raising Measure Imposed On Interstate Commerce, The Tax Court's Reliance On [ATA-Michigan] Was Misplaced.

4. With Respect To The Internal Consistency Standard For Discrimination, The Tax Court Erred In Suggesting That The Taxpayer Must Show Actual Discrimination.

B. A Taxpayer Has The Initial Burden Of Showing Discrimination Through Lack Of Internal Consistency. If That Burden Is Met, The Supreme Court Of New Jersey Has Held That The State Then Has The Burden Of Proving That A Levy Is A Uniform Regulatory Fee. The Tax Court Acknowledged The State Did Not Meet That Burden In This Case, But Nonetheless Found In Favor Of The State.

POINT III

THIS COURT SHOULD REMAND TO THE TAX COURT FOR THAT COURT TO CURE THE PARTNERSHIP LEVY THROUGH APPORTIONMENT.

A. The Tax Court Has The Authority To Order Apportionment To Cure A Constitutional Defect.

22

B. There Are Two Reasonable Methods Of Apportionment To Fix The Problems With The Partnership Levy.

1. This Court Should Remand To The Tax Court To Apply Three-Factor Apportionment. Three-Factor Apportionment Is The Standard Method Of Apportionment And Is Supported By The Record In This Case.

2. In The Alternative, This Court Should Remand To The Tax Court To Apply Apportionment Based On The Percentage Of Partners With New Jersey Nexus. This Method Resolves The Constitutional Issues And Is Consistent With The Tax Court's Finding Regarding The Nature Of The Partnership Levy As A Tax On Capital-Gathering.

C. Apportionment Preserves Most Of The Revenue From The Partnership Levy.

D. Methods That Do Not Fix The Apportionment Problems.

1. The Partnership Levy Is Not Saved By Merely Imposing The Partnership Levy Only With Respect To Partners With New Jersey Nexus.

2. The Partnership Levy Is Not Saved By Applying An Apportionment Percentage To The Per-Partner Tax Rate.

We begin by recognizing several well-established principles. "A taxpayer challenging the Director's determination bears the burden of proof." UPSCO v.

Dir., Div. of Taxation, 430 N.J. Super. 1, 8 (App. Div. 2013) (citing Atl. City Transp. Co. v. Dir., Div. of Taxation, 12 N.J. 130, 146 (1953)).

Statutes are presumed to be constitutional. State v. Lagares, 127 N.J. 20, 31-32 (1992). "This presumption of validity is particularly strong in the realm of economic legislation 'adjusting the benefits and burdens of economic life.'" N.J. Ass'n of Health Plans v. Farmer, 342 N.J. Super. 536, 551 (Ch. Div. 2000) (quoting Usery v. Turner Elkhorn Mining Co., 428 U.S. 1, 15 (1976)). In addition, we "defer to the interpretation of the agency charged with the statute's enforcement, and the Director's interpretation will prevail 'as long as it is not plainly unreasonable.'" Campo Jersey, Inc. v. Dir., Div. of Taxation, 390 N.J. Super. 366, 380 (App. Div. 2007) (quoting Koch v. Dir., Div. of Taxation, 157 N.J. 1, 8 (1999)). Where the issue is strictly legal, we afford no deference to the Director's statutory interpretations and review de novo. Amer. Fire & Cas. Co. v. Dir., Div. of Taxation, 189 N.J. 65, 79 (2006).

In turn, "[o]ur review of a decision by the Tax Court is limited." UPSCO, 430 N.J. Super. at 7 (citing Est. of Taylor v. Dir., Div. of Taxation, 422 N.J. Super. 336, 341 (App. Div. 2011)). "We recognize the expertise of the Tax Court in this 'specialized and complex area.'" Advance Hous., Inc. v. Twp. of Teaneck, 215 N.J. 549, 566 (2013) (quoting Metromedia, Inc. v. Dir., Div. of Taxation, 97

N.J. 313, 327 (1984)). "The Tax Court judge's [factual] findings will not be disturbed unless we conclude they are arbitrary or lack substantial evidential support in the record." UPSCO, 430 N.J. Super. at 7-8 (citing Yilmaz, Inc. v. Dir., Div. of Taxation, 390 N.J. Super. 435, 443 (App. Div. 2007)). "Although the Tax Court's factual findings 'are entitled to deference because of that court's expertise in the field,' we need not defer to its interpretation of a statute or legal principles." Advance Hous., 215 N.J. at 566 (quoting Waksal v. Dir., Div. of Taxation, 215 N.J. 224, 231 (2013)).

We review the Division's motion for partial summary judgment using the same standard applied by the Tax Court—"whether, after reviewing 'the competent evidential materials submitted by the parties' in the light most favorable to [plaintiff], 'there are genuine issues of material fact and, if not, whether the moving party is entitled to a judgment or order as a matter of law.'" Grande v. Saint Clare's Health Sys., 230 N.J. 1, 23-24 (2017) (quoting Bhagat v. Bhagat, 217 N.J. 22, 38 (2014)). Because we review the Tax Court's grant of partial summary judgment to the Division, we conduct a de novo review. Waksal, 215 N.J. at 231-32.

Applying those principles, we affirm substantially for the reasons expressed by Tax Court Judge Mala Sundar in her well-reasoned and

comprehensive forty-one-page December 7, 2018 opinion. We add the following comments.

The Tax Court rejected the premise "that any levy, whether a fee or a tax, is automatically or per se unconstitutional under the DCC solely because it is a flat amount and the payor of the levy is involved in interstate commerce." We concur. Rather, the court must determine whether the levy discriminates against the identified interstate commerce by imposing an impermissibly disparate impact or excessive burden.

Plaintiff did not present a prima facie case of disparate impact or other form of discrimination violative of the DCC. On the contrary, the record demonstrates that the PFF funds the cost of the Division's processing and reviewing partnership and partner returns filed in New Jersey to track their New Jersey source income, which is a purely intrastate activity. Consequently, N.J.S.A. 54A:8-6(b)(2) does not implicate or violate the DCC, even though plaintiff is involved in interstate commerce.

N.J.S.A. 54A:8-6(b)(2) is facially neutral. Therefore, absent disparate impact or undue burden on plaintiff's investment activity, the court was not required to apply the internal or external consistency tests or to determine whether the PFF amount is fairly related to the services provided by the State.

Plaintiff failed to present a prima facie case that the statute discriminates against, or imposes an excessive burden on, interstate commerce. Nor did it demonstrate that the PFF was not fairly related to the Division's processing and review of partnership and partner returns.

Our careful review of the record reveals that material facts are not disputed, and when viewed in the light most favorable to plaintiff, the Division was entitled to partial summary judgment as a matter of law. See R. 4:46-2(c). Judge Sundar's findings are fully supported by substantial credible evidence in the record. Her legal conclusions are sound and consistent with applicable law. Accordingly, we discern no basis to disturb the partial summary judgment granted to the Division.

To the extent we have not specifically addressed any of defendant's remaining arguments, we conclude they lack sufficient merit to warrant discussion in a written opinion. R. 2:11-3(e)(1)(E).

Affirmed.

I hereby certify that the foregoing is a true copy of the original on file in my office.

CLERK OF THE APPELLATE DIVISION

A-3904-18T1